BARNEY GRAFF

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 17, 1904—Rehearing denied April 7, 1904.*

1. APPEALS AND ERRORS—*effect where appeal is taken in a criminal case instead of suing out writ of error.* While an appeal in a criminal case is not authorized by law, yet if there is no motion to dismiss and the People appear and join in error and everything essential to a hearing upon writ of error is before the court, the case will be treated as being before the court on writ of error.

2. JURY—*when overruling challenge for cause is not prejudicial.* Overruling a challenge for cause is not prejudicial, where the juror was challenged peremptorily and the accused was not compelled to retain any juror who was incompetent.

3. CRIMINAL LAW—*when wife of one of defendants named in indictment may testify.* The wife of one of the defendants named in an indictment may testify in corroboration of the testimony of her husband, who had pleaded guilty before the trial and was not, so far as the record shows, on trial, where her testimony is neither for nor against her husband.

4. SAME—*admissibility of conversation in conspiracy case.* A conversation, to be admissible in a case where defendants are charged with conspiracy, need not have taken place in the presence of some one of the parties jointly indicted, so long as the conversa-

tion was in furtherance of the common design by one engaged in the conspiracy, whether named in the indictment or not.

5. SAME—*user is prima facie evidence of corporate existence in criminal case.*   Under an indictment charging defendants with conspiracy to defraud certain alleged foreign insurance corporations of goods and property, uncontradicted proof that such companies made and issued policies, and after loss adjusted the same and paid over the money, is sufficient proof of corporate existence.

6. SAME—*rule of merger of misdemeanor at common law.*   At common law, where the indictment was for a misdemeanor but the proof showed a felony, the misdemeanor was regarded as merged in the felony, and an acquittal of the misdemeanor would be directed in order that the accused might be indicted for the felony.

7. SAME—*rule of merger in Illinois in case of conspiracy.*   The rule of merger in conspiracy is limited to cases where the conspiracy charged is a misdemeanor but the completed offense, as established, is a felony, and does not apply where the conspiracy charged and the completed offense are both misdemeanors or both felonies.

8. SAME—*conviction for conspiracy may be had though one of the overt acts is a felony.*   Conviction for a conspiracy to defraud an insurance company may be had notwithstanding one of the overt acts is arson, where the other acts include the buying of a small stock of goods, carrying away the greater part thereof before the fire and presenting false invoices for the goods in excess of their cost.

9. SAME—*not error to permit co-defendant to plead guilty during trial, in presence of jury.*   It is not ground for reversal that one of the co-defendants in a criminal case withdrew his plea of not guilty and entered a plea of guilty in the presence of the jury during the progress of the trial, where neither the court nor the prosecution had any notice of such co-defendant's intention.

10. EVIDENCE—*what admissible in trial for conspiracy.*   A written statement relating to the value of goods destroyed by fire, made by one of the co-defendants in a conspiracy case at the instigation of another in furtherance of the common purpose to defraud an insurance company, is admissible in evidence.

11. INSTRUCTIONS—*error in instruction will not reverse if not harmful.* Error in an instruction in singling out the testimony of a particular witness is not ground for reversal, where there are other witnesses who gave practically the same testimony and there is ample evidence in the record to sustain the verdict.

*Graff* v. *People,* 108 Ill. App. 168, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

Appellant, Barney Graff, in July, 1901, was jointly indicted with Ben Ettelson, Dave Ettelson, Fred Alexander and George Samels,. charged with a conspiracy to obtain money from the Buffalo German Insurance Company, and the Rochester German Insurance Company of Rochester, N. Y., by false pretenses, with intent to cheat and defraud said companies. The defendants Fred Alexander and George Samels entered pleas of guilty before the trial of said cause and testified in the case on behalf of the People. During the trial, and after the State had announced that it had closed its case, Ben Ettelson, another of the defendants, arose to his feet and stated to the court that he desired to enter a plea of guilty and to take the stand and testify as to the facts in the case, appellant and Dave Ettelson being the only remaining defendants standing trial.

The evidence discloses that for some time previous to January 1, 1901, appellant and Ben Ettelson, one of the co-defendants, had been friends, and in the month of November, 1900, appellant, during an interview with Ben Ettelson, suggested that he get some one who would be willing to make some "easy money." Shortly afterwards Ettelson approached a man by the name of Clark Snyder with the proposition suggested to him by Graff, but Snyder refused to join in the scheme, and shortly afterwards Ettelson made the same proposition to Alexander and he consented to become a party to the scheme. Thereupon Ettelson unfolded the scheme to Alexander, stating that he wanted him to start a cigar store and to first select the store, and he, Ettelson, would arrange to have it stocked with cigars, and after it was so stocked they could make some "easy money." Alexander and Ettelson immediately began to look for a vacant store to rent, and during the latter part of December located one on the south side of the city of Chicago in the building known as Nos. 469-471 Forty-seventh street, which Ettelson stated to Alexander was "made to order" for

their purpose. Ettelson then instructed Alexander to see one M. A. Pierce, who was the agent having the store for rent, and arrange for the renting of the same, which Alexander did, and informed Mr. Pierce that he intended to conduct a retail cigar store, and being informed that the room rented for $30 per month, rented the same and paid $30 in advance, the money being furnished by Ettelson. In a few days Ettelson, with Alexander, went to see George Samels, who was engaged in the cigar business, Ettelson introducing Alexander to Samels and recommending him, saying anything sold to Alexander would surely be paid for. It appears, also, from the evidence, that Graff had in the meantime visited Samels and informed him of Ettelson and Alexander's intention of going into the cigar business, and that he (Graff) would vouch for their responsibility and that Samels could safely sell them a stock of cigars. After having the arrangements made with Samels for the cigars, Ettelson and Samels purchased second-hand fixtures. The fixtures and stock being placed in the store, Ettelson instructed Alexander to take out $3000 insurance on the fixtures and stock. The fixtures cost $59 and the stock of cigars about $700. Alexander immediately went to see about the insurance, and after some trouble he succeeded in getting the two insurance companies named in the indictment to carry the insurance, $500 being placed on the fixtures and $2500 on the stock. Ettelson states that during all this time he was in daily communication with appellant, and that appellant advised him with reference to everything done. After the store was opened, ready for business, Alexander apparently took charge, which was some time after the middle of January, 1901. On January 31, being nine days after the policies were received, Ben Ettelson, accompanied by his brother, Dave, came to the store, bringing with them a five-gallon gasoline can, and instructed Alexander to place the can in the rear room, warning him not to place it near the fire. The same after-

noon Ben Ettelson packed up a large amount of the stock of cigars and removed them to his house. Between twelve and one o'clock in the morning Ettelson and Graff came to the store and saturated everything with gasoline, and Ettelson states that some combustible material was used which had been given him by appellant, and a light being applied to the combustible material an explosion resulted therefrom and the place was consumed by fire. Ettelson and Graff ran from the premises. Ettelson, being badly burned, was compelled to call a physician and was taken to the hospital, where he stayed for several weeks. Appellant sent for Alexander the next morning, and he came to appellant's place of residence and had a talk with appellant, who informed Alexander that Ettelson had been badly burned at a fire at his place of business the night before and that he would assist Alexander in getting the insurance money, and to call at seven o'clock that evening and he would tell him what to do, which he did, and was instructed to take the policies to Joseph Fish, an adjuster, which Alexander did. Fish stated it would be necessary to obtain statements showing the purchase price of the stock and fixtures. Alexander informed appellant of this fact, and appellant said to Alexander that he would attend to that, and at this time had Alexander make a false statement as to the amount of fixtures. Samels shortly afterwards called on appellant and informed him that the stock of cigars had not been paid for. Appellant said to him that he would get his money as soon as the insurance money was collected, but informed Samels that in order for him to get the money it would be necessary for Samels to make out false statements showing that $3000 worth of cigars had been purchased instead of $700, which Samels did, sending the statement to Fish, the adjuster. Fish then began negotiations for a settlement on the insurance policies, and after some delay made a settlement with the companies for $1500, the money all being turned over

to appellant, Alexander receiving $150 and Ettelson receiving $300.

The case was tried before a jury, who found the appellant guilty of conspiracy to obtain money by false pretenses, as charged in the indictment, and fixed his punishment at a fine of $2000 and imprisonment in the penitentiary, on which the court rendered judgment. The defendant Dave Ettelson was found not guilty. A writ of error was prosecuted to the Appellate Court by appellant, where the judgment of the circuit court was affirmed, and appeal was prayed and allowed to this court.

Appellant assigns as error (1) the action of the court in overruling a challenge, for cause, of jurors; (2) the admission of improper evidence; (3) insufficient proof of the existence of the corporations alleged to have been defrauded; (4) that the indictment charged a misdemeanor while the evidence showed the offense to have been a felony, and that the misdemeanor merged in the felony, and that appellant should have been tried for the felony, being the burning of the building; (5) in the court permitting Ben Ettelson to withdraw his plea of not guilty and enter a plea of guilty in the presence of the jury, and then testifying for the State; (6) in permitting certain exhibits to be offered in evidence; (7) the giving and refusing of instructions; (8) the refusal of the court to grant a new trial by reason of newly discovered evidence.

STEDMAN & SOELKE, for appellant.

CHARLES S. DENEEN, State's Attorney, and HARRY OLSON, (HAYNIE R. PEARSON, and SAMUEL W. JACKSON, of counsel,) for the People.

Mr. JUSTICE RICKS delivered the opinion of the court:

The law does not authorize an appeal in a criminal case, and whenever a motion to dismiss such an appeal has been made it has been allowed. In this case no motion of that kind was made, but the appearance of the

People was entered and there was a joinder in error. The cause was submitted for decision upon the errors assigned on the record, and inasmuch as everything essential to a hearing upon a writ of error is before us, we will treat the case as being here on writ of error. That was done in *Berkenfield* v. *People,* 191 Ill. 272, where the record was in the same condition.

As to the first objection, it need only be said that the record fails to show that appellant was prejudiced in any way by reason of the court disallowing the challenge, for cause, of jurors, inasmuch as the jurors were challenged peremptorily, and appellant was not forced or compelled to keep any juror that was incompetent. *Spies* v. *People,* 122 Ill. 1.

As to the second error assigned, the evidence objected to, first, was that of the witness Mrs. Alexander, who was the wife of one of the defendants named in the indictment, and was permitted to testify in rebuttal, in corroboration of the testimony of her husband. Alexander had pleaded guilty before the beginning of the trial, and was not, so far as this record shows, a defendant, and we are unable to see why her testimony was not competent, the same as any other witness. In criminal cases, as a general proposition, a husband or wife cannot testify for or against one another, but here the wife was not testifying either for or against her husband. It is claimed, secondly, the court erred in permitting O. C. Kemp, the insurance adjuster, to testify to alleged conversations with Joe Fish, at which neither appellant nor any of the persons named in the indictment were present. Fish was the representative of appellant and Alexander and went to Kemp with the proofs of loss, and in the conversations there does not appear to have been anything said except in relation to the making and delivery of the necessary proofs of loss, which Kemp declined to accept, and said he regarded the claim as fraudulent. Conversations, to be admissible in evidence in a case

where the defendant is charged with conspiracy, need not be in his presence or in the presence of some one of the parties jointly indicted, so long as the conversation was in furtherance of the common design and by one engaged in the conspiracy, whether named in the indictment or not. *Lasher* v. *Littell*, 67 N. E. Rep. 373; *Spies* v. *People, supra; VanEyck* v. *People*, 178 Ill. 199.

As to the third contention, the indictment charged, "the personal goods, funds, money and property of the Buffalo German Insurance Company, a corporation organized and existing under and by virtue of the laws of the State of New York, * * * and property of the Rochester German Insurance Company of Rochester, N. Y., a corporation organized and existing under and by the laws of the State of New York," etc. Appellant contends that it became necessary for the prosecution to prove that the corporation had been organized and incorporated as alleged in the indictment. Proof of the actual exercise and enjoyment of the corporate powers and functions was made by the witness Kemp, who was the agent of the companies. Section 613 of the Criminal Code provides "that in all criminal prosecutions involving proof of the legal existence of a corporation, user shall be *prima facie* evidence of such existence," (Starr & Cur. Stat. p. 1402,) and where there is no countervailing proof, the proof of user sufficiently supports the allegations, and as was said in the case of *Kincaid* v. *People*, 139 Ill. 213: "The language is broad and comprehensive, including all criminal prosecutions involving proof of the legal existence of a corporation, and it is not, as is supposed,—nor can it be, by any fair construction,—confined to proof of the existence of an Illinois corporation only." Both corporations made and issued policies of insurance, and after loss, still acting in their corporate capacity, compromised and adjusted the same through their adjuster, with Fish, who was acting for and under the directions of appellant, and he received the money from

the corporations as such.    We think the evidence was ample upon this point.

Appellant's fourth contention is, that the indictment in this case should have been under section 14 of division 1 of the Criminal Code, (Starr & Cur. Stat. par. 48, p. 1237,) which section makes it a felony to burn or set fire to, or cause to be burned, any building or chattels, etc., insured against loss by fire, with intent to injure the insurer, instead of under section 46 of the same statute, for conspiracy, which is a misdemeanor.    The argument proceeds upon the theory of the merger of the lesser offense (the conspiracy) charged in the indictment with the felony, (arson,) which was not charged in the indictment but which was one of the overt acts pursuant to the conspiracy.

At the common law, because of the marked difference between felonies and misdemeanors, arising not only from the dissimilarity and extent of the punishment and the consequences to the accused but also the method of procedure, the theory of merger was evolved and generally obtained.    Under an indictment for misdemeanor a person was entitled to the full privilege of counsel, to a copy of the indictment and to a special jury, which, upon an indictment for a felony, he was denied.    With these circumstances in view it was considered that a person could not be found guilty of a misdemeanor upon an indictment for felony, although the misdemeanor formed a constituent of the felony and was complete, as he would lose substantial advantages of the method of trial provided for the misdemeanor; and where the indictment was for a misdemeanor and the evidence necessary to establish it showed the commission of a felony, an acquittal would be directed in order that the prisoner might be indicted and tried for the felony.    In such case the technically less crime of misdemeanor merged in the technically higher crime of felony, and it became a doctrine that where the same criminal act satisfied the defi-

nitions of misdemeanor and felony, the misdemeanor was merged and gone and the felony could alone be punished. It was also the rule at the common law that one charged with a felony could not be convicted of a misdemeanor, although the latter might be legally involved in the former, for by the law, as then administered, felonies and misdemeanors were classed as different things, and where there was an indictment for a felony, if the proof failed to show a felony but did show a misdemeanor, the person was detained in custody, to be indicted and prosecuted for the misdemeanor. So it has been held in both England and America that where an indictment was for a conspiracy to commit a felony, though the conspiracy would be a misdemeanor, if the object of the conspiracy was completed and a felony was committed, then the misdemeanor would merge in the felony. *Commonwealth* v. *Kingsbury*, 5 Mass. 106; *People* v. *Mather*, 4 Wend. 230; *State* v. *Hattabough*, 66 Ind. 223.

In the modern criminal law, by reason of legislation and decisions of the courts, the distinctions in the trials of felonies and misdemeanors have been abolished, and in this State it has long been the law that a person charged with an atrocious offense may be convicted of any constituent offense of a lower degree, provided such minor offense is substantially included in the description in the indictment or accusation, and even without regard to the technical line of demarcation between felonies and misdemeanors. (*Herman* v. *People*, 131 Ill. 594; *Beckwith* v. *People*, 26 id. 500; *George* v. *People*, 167 id. 447; *Howard* v. *People*, 185 id. 552.) Where, however, the conspiracy alleged in the indictment is a misdemeanor and the offense for the commission of which the conspiracy was formed is also a misdemeanor and is completed, it has been uniformly held, in this country, that there is no merger. And so the rule applies, if the conspiracy charged is a felony, and when the completed crime is a felony, there is no merger; or, in other words, the rule of merger does

not apply where both the conspiracy for which the person is indicted and the completed offense are both felonies or both misdemeanors. (*Orr* v. *People*, 63 Ill. App. 305; *Hamilton* v. *State*, 36 Ind. 280; 10 Am. Rep. 22; *Commonwealth* v. *McPike*, 3 Cush. 181; 50 Am. Dec. 727; *State* v. *Dowd*, 19 Conn. 388; *State* v. *Salter*, 48 La. 197; *Keefe* v. *People*, 40 N. Y. 348.) And it would seem that in conspiracies the rule of merger is confined to those cases where the conspiracy charged in the indictment would be a misdemeanor, and the crime, when completed, as charged in the indictment, is a felony and the proof shows the completed crime. (*United States* v. *Gardner*, 42 Fed. Rep. 829; *United States* v. *McDonald*, 3 Dill. 545; *State* v. *Murphy*, 6 Ala. 765; 41 Am. Dec. 79; *State* v. *Lewis*, 48 Iowa, 579; 30 Am. Rep. 407.) And it is believed that by the greater weight of authority the rule of merger, as formerly existing at common law, has been to a great extent abrogated and confined to very narrow limits. (Bishop on New Crim. Law, secs. 791, 814, 815, 815*a;* Wharton on Crim. Law,—8th ed.—1343, 1344.) If the indictment be for a conspiracy which is a misdemeanor, and the conspiracy comprises the doing of many things, and the proof shows that among the overt acts done pursuant to the conspiracy is a felony, it would seem the greater weight of authority is that a conviction may nevertheless be had for the conspiracy. *Johnson* v. *State*, 2 Dutch. (26 N. J. L.) 313; *Commonwealth* v. *Blackburn*, 1 Duval, 4; *People* v. *Peterson*, 60 N. Y. App. Div. 118; *United States* v. *Rindskoff*, 6 Biss. 265; *State* v. *Grant*, 86 Iowa, 217; 20 Am. & Eng. Ency. of Law, (2d ed.) 605; 3 Greenleaf on Evidence, sec. 90; *State* v. *Murray*, 15 Me. 100.

The crime, under paragraph 48, could be committed without any conspiracy, and the crime charged in the indictment could have been devised and committed without arson. It so happens that arson was one of the means selected for the commission of the crime charged, but it was only one of them. The proof shows that the con-

spiracy charged in the indictment was primarily to obtain from the insurer insurance greatly in excess of the amount of the loss.   It involved an outlay of about $750 and the pressing of a claim for $3000.   The fraud consisted in buying a small amount of goods, carrying a great portion of them away from the store, burning a small portion and presenting false invoices of goods purchased.   The defendant Samels, so far as the evidence discloses, was not a party to the conspiracy until after the arson, nor is it shown that he had any knowledge of the arson until after the fact.  He could not have been indicted for arson, but only as an accessory after the fact, while he and all the others included in the indictment were, if the evidence is to be accredited, guilty of the crime charged in the indictment, and we cannot yield our assent to the contention that where a conspiracy is formed, including or requiring several acts for its consummation, and because one of the acts may be of the nature that it is classed as a felony, therefore the conspirator must be indicted for the felony and the conspiracy be disregarded.  If the conspiracy charged were only to commit the crime of arson for the purpose of defrauding the insurance companies named in the indictment, then the contention made here would have much force. It is not shown that the details of the conspiracy were all developed or evolved at the inception of the conspiracy, which is the crime charged here, but that the plan grew with time, and after the arson the plan of increasing the demand against the insurance companies by having Samels, who had sold to Ettelson and Alexander cigars to the amount of about $700, prepare and present, for use in the adjustment of the loss, invoices of sales to the amount of $3000, seems to have been conceived. Samels had not been paid for his goods, and he was told that in order to get his pay it was necessary that he present the false invoices, which he did, and which made him a party to the conspiracy.

A careful examination of the American authorities cited by appellant upon this proposition will disclose that the only one that may be fairly said to be directly in point and tending to sustain his contention is *Commonwealth* v. *Kingsbury, supra.* From a careful reading of that case it will appear that the conspiracy charged was to commit a felony and that it was carried into effect, and the real matter before the court was not the question presented to this court, as would seem to be contended. In that case the Massachusetts court remarks that the rule of merger applies both in respect to misdemeanors and to felonies. This announcement is so contrary to authority that the case cannot carry with it the weight it otherwise might. It appears that the rule announced in that case was subsequently departed from in the case of *Commonwealth* v. *Walker,* 108 Mass. 309.

*Hoyt* v. *People,* 140 Ill. 588, does not seem to us to be authority upon the point here presented. The question there was whether the indictment was double. It charged a conspiracy to burn, and it also charged the burning of a certain building by the defendants. The indictment was held not double, but to be a good indictment for arson, and it was merely said in the discussion that "the conspiracy, in such case, is merged in the consummated act of burning."

It is very earnestly contended that if this conviction be allowed to stand, appellant may be indicted and convicted of the crime of arson under said paragraph 48, as it is urged that the present conviction cannot be pleaded in bar to an indictment for arson. We do not feel called upon to pass upon the question as to whether this conviction can be pleaded in bar to a prosecution under said paragraph 48. Whether it can or not does not furnish a sufficient reason for relieving appellant from the consequences of his own deliberate actions. If he has in fact committed two crimes that are so distinct that the conviction of one may not be urged in bar of the other, the misfortune must be his own.

Complaint is made that the trial court permitted Ben Ettelson, a co-defendant with appellant, after the People rested, to withdraw his plea of not guilty and enter his plea of guilty in the presence of the jury and during the progress of the trial. We are unable to see how error can be predicated upon this matter. The court had no more control over Ben Ettelson than did appellant. He had the unquestioned right to plead guilty if he saw fit to do so, and the only proper place for him to do so was in open court. It is not shown or claimed that the court had any notice of Ettelson's intention to withdraw one plea and enter the other until it was done. Nor was it shown that the State had any notice of the intended action of Ettelson. It seems to have been upon the spur of the moment and to have been somewhat dramatic. It may be that it had some influence with the jury, but neither the People nor the court was responsible for it. He was a co-defendant with the appellant and was being tried jointly with him, and there is no reason to assume that the court or the prosecution knew any more about his intended action than appellant. Be that as it may, and though it may have been an unfortunate circumstance for appellant, it was not one for which a blame can be attached to the court or to those representing the People. Appellant's counsel now state that both the appellant and his counsel were so surprised that they were dumfounded, and it may be that they were greatly surprised; but they doubtless felt, as the court must have felt, that however great the surprise, Ettelson was exercising a right that he unquestionably had, and unless there was over-indulgence by the court (which there does not seem to have been) or collusion by those representing the State, (which is not shown,) the incident must be regarded as one of those unfortunate things that sometimes happen in the course of a trial, for which no one in particular is to blame.

After Ettelson had pleaded guilty the court re-opened the case for the State and permitted the State to use

Ettelson as a witness. The only objection interposed by appellant was upon the ground that the State had closed its case.   It is admitted that it rested in the discretion of the court to re-open the case and permit the State to offer further evidence, but appellant now urges that he was surprised by the course Ettelson had taken and by the offered testimony.   Whether he was surprised, in a legal sense, is not shown by the record, as he did not object to the evidence upon the ground of surprise or make any motion addressed to the court upon that theory.   As far as the court could do so by instructions, the injurious effect, if any, of Ettelson's conduct was repaired by appellant's fifty-second and fifty-third instructions. The jury were told that the fact that Ettelson had pleaded guilty in their presence should not influence them in arriving at their verdict or be considered by them as any evidence of guilt of the other defendants.

At the time of the adjustment, Alexander, one of the co-defendants, had a certain written statement made by himself and relating to the value of the fixtures that were claimed to have been lost by the fire.   This exhibit was admitted in evidence and is complained of by appellant.   It was one of the efforts in the direction of the conspiracy by one of the conspirators, for the accomplishment of the given purpose.   The evidence was that it was made at the instigation of and under the direction of appellant, and we are unable to see any ground upon which it was not admissible.

Complaint is made as to the giving and refusing of instructions.   Those given were sixty-seven in number, and from a careful review of them, and taken as a series, we think they fully and fairly presented the law to the jury, and that those that were refused were covered by other instructions given.

Instruction 47 given for the People singled out and directed special attention to the evidence of Ben Ettelson.   It told the jury that the testimony of an accom-

plice should be received with caution, and yet that a conviction might be had upon the uncorroborated testimony of an accomplice, and that if they believed, from the evidence, that the testimony given by Ettelson was true, they had the right to act upon it as true; that it should be weighed by the jury like the testimony of any other of the witnesses, or that the testimony of an accomplice, like all other evidence in the case, was for the jury to pass upon. By instructions 44 and 45 given for appellant the jury were further and particularly cautioned to act with great caution and care, and subject to critical examination and scrutinization, in the light of all the other evidence in the case, the testimony of accomplices, and that they should not convict upon such testimony alone, unless, after a careful examination of it, they were satisfied, beyond a reasonable doubt, of its truth, and that they could safely rely upon it. It was error to have specifically pointed out the evidence of the witness Ettelson, and such action has been many times condemned by this court; but there was evidence of other accomplices to the same effect as Ettelson's, though not so full, and there was ample evidence in the record to warrant the verdict found, and we would not feel justified in reversing this case for the error committed, as we are unable to see that it resulted in harm to appellant.

Motion for new trial was made and partially based upon newly discovered evidence. The evidence claimed to have been newly discovered was but cumulative, and was not sufficient to require the granting of a new trial.

We find no reversible error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*