## PEOPLE *v.* RICHARDS AND PELTON.

An indictment lies for a conspiracy to cheat an individual of *real* estate, as well as of personal property.

A conspiracy to commit a felony, when executed, ·is merged in the felony; but a conspiracy to commit a misdemeanor is not merged in the misdemeanor.

In an indictment for a conspiracy, the agreement or combination must be set out, but the means to be used in executing the conspiracy need not be set forth in the indictment, unless they are a component part of the offence, as where the combination and the object to be attained are not in themselves unlawful, but the means to be used, to effect the object, are unlawful.

People *v*. Richards and Pelton.

An indictment for a conspiracy to cheat an individual of his lands and goods, need not state the means by which it was to be accomplished.

In conspiracy, the offence consists in the unlawful agreement, and not in the acts that follow it.

CASE reserved from Hillsdale Circuit Court. Indictment for a conspiracy. The defendants were tried and convicted in the circuit court, and the questions reserved were as to the sufficiency of the indictment, which contained three counts. The first count charged that defendants, on the tenth day of November, in the year eighteen hundred and forty three, with force and arms, at Somerset, in the county of Hillsdale, unlawfully and wickedly did conspire, combine, confederate and agree together to cheat and defraud Laton Hoxie of his lands and tenements, and of his moneys, goods and chattels, he the said Laton Hoxie being a man of weak mind and intellect; and that they, the said William P. Richards and Nathan Pelton, in pursuance of the said conspiracy, combination and agreement so as aforesaid entered into by them then and there, to wit, on the said tenth day of November, at Somerset aforesaid, did falsely pretend that one Thomas Farmer was about to institute a criminal prosecution against him the said Laton Hoxie, upon a charge that he the said Laton Hoxie had attempted to commit a rape upon the body of one Sophronia Farmer; and did then and there represent to and persuade him the said Laton Hoxie, that by the testimony of the said Sophronia Farmer he would be convicted of such offence, and imprisoned in the state prison of this state for a long period of time, to wit, for twenty years, and that he must leave the state of Michigan: and did then and there, in pursuance of said conspiracy, combination and agreement, persuade and induce him the said Laton Hoxie to execute and deliver to the said William P. Richards a deed whereby was conveyed to said Richards and his heirs a certain piece or parcel of land situate in said county of Hillsdale, containing many acres, to wit, one hundred and twenty acres, of great value, to wit, of the value of two thousand dollars, of the property of him the said Laton Hoxie, without paying to him the said Laton Hoxie any valuable consideration therefor: and did then and there, in pursuance of said conspiracy, persuade and induce him the said Laton Hoxie to execute and deliver to the said Nathan Pelton a power of attorney, constituting the said Nathan Pelton his attorney to collect and receive all debts due

and owing to the said Laton Hoxie, there being then due and owing to the said Laton Hoxie many debts, amounting in the whole to a large sum of money, to wit, the sum of five hundred dollars: and did then and there, in pursuance of said conspiracy, combination and agreement, persuade and induce the said Laton Hoxie to part with and deliver up possession to the said Nathan Pelton of the said lands and premises, together with divers articles of personal property of great value, to wit, of the value of five hundred dollars, of and belonging to him the said Laton Hoxie, without paying him the said Laton Hoxie any consideration whatever therefor, and with the intent to cheat and defraud him the said Laton Hoxie of his lands, goods, money and chattels, &c.

The second count stated that defendants afterwards, to wit, on the said tenth day of November, in the year aforesaid, with force and arms, at Somerset aforesaid, unlawfully, fraudulently and deceitfully did conspire, combine, confederate and agree together to cheat and defraud the said Laton Hoxie of his lands, tenements, goods and chattels; and that the said William P. Richards and Nathan Pelton, in pursuance of said conspiracy, combination and agreement so as aforesaid entered into by them, then and there did falsely pretend that one Thomas Farmer would prosecute him the said Laton Hoxie upon a charge that he the said Laton Hoxie had attempted to force, abuse and commit a rape upon an infant daughter of the said Thomas Farmer, and cause him the said Laton Hoxie to suspect and believe that he the said Thomas Farmer would prosecute him the said Laton Hoxie upon said pretended charge, he the said Laton Hoxie being a man of weak mind and intellect: and did then and there, in pursuance of said conspiracy, combination and agreement, represent to and persuade him the said Laton Hoxie that, upon the testimony of the said infant daughter of said Thomas Farmer, he would be convicted of said offence; (they the said William P. Richards and Nathan Pelton well knowing that the said Thomas Farmer would not prosecute the said Laton Hoxie on said pretended charge): and did then and there, in pursuance of said conspiracy, combination and agreement, persuade and induce him the said Laton Hoxie to part with, convey and deliver to them the said William P. Richards and Nathan Pelton his lands, tenements, goods and chattels, without receiving therefor any valuable consideration, the said lands, tenements, goods and chattels being of great value, to wit, of the

value of three thousand dollars; and did then and there, in pursuance of said conspiracy, combination and agreement, obtain from and receive of him the said Laton Hoxie his lands, tenements, goods and chattels without paying him therefor any valuable consideration, with the intent and for the purpose of cheating and defrauding him the said Laton Hoxie of his lands, tenements, goods and chattels, to the great damage, &c.

The third count was as follows: And the jurors aforesaid, upon their oaths aforesaid, do further present that the said William P. Richards and Nathan Pelton afterwards, to wit, on the same day and year aforesaid, with force and arms, at Somerset aforesaid, unlawfully, fraudulently and deceitfully, did conspire, combine, confederate and agree together to cheat and defraud the said Laton Hoxie of his lands, tenements, goods and chattels, to the great damage of the said Laton Hoxie, to the evil example of all others, and against the peace and dignity of the people of the state of Michigan.

*Howell,* for the people,

*Backus,* for defendants.

*By the court,* WING, J.    The counsel for the defendants insists that cases of indictable conspiracies at common law are classed under two heads; either there must be a charge of a conspiracy to commit a *criminal act,* or to commit an act not criminal by criminal *means.*    That in the one case the offence is to be determined by the nature of the *object,* in the other by the nature of the *means.*

This question was elaborately argued by senators Spencer and Stebbins, the first giving the judgment of the majority, and the latter of the minority of the court of errors in New York, in the case of The People *v.* Lambert, 9 Cowen 578.    The charge set forth in the indictment in that case was in substance that the defendants conspired, by wrongful and unjust means, to cheat the Sun Fire Insurance Company and other persons of their goods and chattels; and that in the execution of said conspiracy and in pursuance thereof, and by certain indirect and undue means, did cheat and defraud the said company of their goods, chattels and effects—describing them—and thereby impoverished and injured the company, &c.

The supreme court sustained the indictment, but their judgment was reversed by the court of errors. There were many points made and decided in that case, some of which are raised in this case. Upon a careful examination of the arguments of the court and the senators, we are constrained to adopt the views of the supreme court and the minority of the senate, as being sustained by the common law decisions.

In Arch. Crim. Pl. 507, the author says a conspiracy is an agreement between two or more persons: 1. Falsely to charge another with a crime punishable by law—either from a malicious or vindictive motive or feeling towards the party, or for the purpose of extorting money from him. 2. Wrongfully to injure or prejudice a third person or any body of men in any other manner. 3. To commit an offence punishable by law. 4. To do an act with an intent to pervert the course of justice, &c. 3 Chitty's Crim. L. 1139; 1 Hawk. P. C. b. 1, ch. 72, sec. 2, support the same doctrine. In the second class we have an authority for an indictment for a conspiracy to cheat an individual. See 7 Am. Jurist 445. It is said, however, that an indictment will not lie for a conspiracy to commit any mere civil trespass. Arch. Crim. Pl. 507.

Mr. Chitty, at the page cited above, says, " there are perhaps few things left so doubtful in the criminal law as the point at which a combination of several persons in a common object becomes illegal; certain it is, that there are many cases in which the act itself would not be cognizable by law if done by a single person, which becomes the subject of indictment when affected by several with a joint design." He further remarks, " it might be inferred from the decisions that, to constitute a conspiracy, it is not necessary.that the act intended should be in itself illegal, or even immoral—that it should affect the public at large, or that it should be accomplished by false pretences; and, though it is agreed that the gist of the offence is the union of persons, it is impossible to conceive a combination, as such, to be illegal. We can rest, therefore, only on the individual cases decided, which depend in general upon particular circumstances, and which are not to be extended."

The counsel for defendants in this case cites the last sentence of the last quotation, which is taken from the remarks of Lord Ellenborough in the case of King v. Turner, 13 East. 231, to show that even if an indictment for a conspiracy to commit a fraud upon an individual will lie, yet it cannot lie where the object of the conspiracy is to defraud him

of his lands; and the indictment being bad as to land, is bad as to all. In the case cited, the indictment was for a conspiracy to commit a civil trespass, by going on to another person's land to kill hares. It was held the indictment would not lie, and Lord Ellenborough's remark was made in reference to such a case. The judge cannot be supposed to have intended to say that an indictment for a conspiracy to cheat an individual would only lie in cases where the facts were the same as those in which indictments had been sustained. He only objects to the extension of the doctrine to cases where the principles laid down in former cases were not involved.

By reference to the cases, I am unable to perceive that they depend upon the kind of property to obtain which was the object of the conspiracy. In this, as in many of the cases, the intended fraud or cheat gives character to the transaction, and not the nature of the property. It is true, that fraud in relation to real estate resolves itself into some other distinct offence when consummated; but the same may be said of all kinds of property. We do not pretend to lay down a rule which shall govern in this class of cases—we only say, that from an examination of the cases cited by the elementary writers, we are of the opinion that this case falls within the general principles deducible from those cases.

It is insisted that the first two counts are bad, because they charge an executed conspiracy to cheat by false pretences, which is a higher crime than a conspiracy at common law.

The objection is founded upon another, made in this cause, that an indictment will only lie for a conspiracy to commit a crime, or to do a lawful act by criminal means; but the English authorities and the decisions in Maryland and other states establish, as we think, and as we have said, a contrary doctrine: and if a conspiracy may be indictable, although the act to be done, if done by an individual, or the means made use of would not be indictable, it would follow from the position of the defendant's counsel, that a conspiracy which is a misdemeanor may be merged in acts which of themselves do not amount to a misdemeanor, or acts which in themselves amount only to a misdemeanor, an offence of the same grade with the conspiracy; and the consequence might also be that a conspiracy might be indictable if not executed, which, if executed, would not be indictable.

It was said in an early case in Massachusetts, Commonwealth v. Kingsbury, 5 Mass. 106, that where the misdemeanor or felony is actually executed, the conspiracy is merged and cannot be punished. But the case was one of a conspiracy to commit a distinct felony. It is no doubt the law, that if the felony is proved the conspiracy must at once merge. To apply such a rule to misdemeanors, is scarcely in accordance with legal analogy, and it is supported by no other authority. That it never obtained in England to such an extent as to involve the absorption of a conspiracy to commit a misdemeanor in the misdemeanor itself, is evident from the elementary treatises, in which no such doctrine is even broached, and the books of precedents, in which forms constantly occur for conspiracies to commit misdemeanors to which the overt act is attached. See 15 Maine R. 100; 7 Serg. & Raw. 469. This subject was fully discussed in New York, in the case of The People v. Mather. Justice Marcy says, in delivering the opinion of the court: "It is supposed that a conspiracy to commit a crime is merged in the crime when the conspiracy is executed. This may be so when the crime is of a higher grade than the conspiracy, and the object of the conspiracy is fully accomplished; but a conspiracy is only a misdemeanor, and when its object is only to commit a misdemeanor, it cannot be merged. Where two crimes are of equal grade there can be no legal, technical merger." 4 Wendell 265.

But we are disposed to go no farther than is necessary to decide this case, and if our views as expressed above are not correct, still the question made by the defendant's counsel may be disposed of on another ground.

Does it appear by the indictment in this case, as in the case in 5 Mass., that an offence of a higher grade than a conspiracy has been committed? Would the acts set forth as having been done in pursuance of the conspiracy, if true, make defendants guilty of a *cheat*, or of obtaining goods or property of any kind by *false pretences*, or of having *obtained the signature to any written instrument?* I think not. Neither of the counts charge, as is supposed by defendants' counsel, a conspiracy to cheat by false pretences. The means by which the conspiracy was to be accomplished, formed no part of the conspiracy. They are set forth in the indictment as acts done in pursuance or in furtherance of the conspiracy. The acts charged as done, were, that one Thomas Farmer was

about to prosecute—to charge Hoxie with an attempt to commit a rape upon Farmer's daughter; that by the testimony of the daughter he would be convicted and sent to the state prison, and he must leave the state. This is the substance of the pretences. In the class of cases stated, the tokens must be false, and the pretences must be of some existing fact, and must be made for the purpose of inducing the prosecutor to part with his property, and it must appear that the object was effected by such means as are stated; but this does not appear in this case. The pretence that a person would do an act which he did not mean to do, as a pretence that he would pay for goods on delivery, is not a false pretence within the act, but merely a promise for future conduct. Arch. Crim. Pl. 246; 4 City Hall Recorder 156; Roscoe's Crim. Ev. (2d edit.) 422; 1 Carrington & Payne 661; 3 T. R. 98.

Our statute is taken from the English statutes, and the decisions upon the latter are applicable to cases arising under the former.

If I am correct in this view of the subject, it will obviate the necessity of further discussing the doctrine of merger. The charges are not of existing facts: but of things which a third person has threatened to do—upon which no indictment can be predicated. The forms in 3 Chitty's Crim. L. 1185, 1186, are examples of indictments for executed conspiracies.

Again, it is objected that the indictment charges that the defendants induced and persuaded Hoxie to make his deed, but does not set forth the means. This objection is also in part predicated upon the erroneous assumption that the object to be accomplished must be a crime, or the means must be criminal. The objection may also be based upon the general rule, that in all indictments the offence must be so set forth as to enable the court to judge whether an offence requiring the defendant to plead is stated upon the record.

The agreement or combination must be set out. The crime does not consist in the mere combination: but where to this is added an illegal object, then it becomes criminal; and where neither the conspiracy nor the object to be attained is unlawful, but the means by which it is to be executed are criminal, then it is necessary to set out the means intended to be used, as a component part of the offence.

In every case that can be adduced of a conspiracy, the offence depends upon the unlawful agreement, and not on the act which follows

it; the latter is but the evidence of the former. 2 Russel 568; 2 Mass. 537; 2 Burr. 993; 3 *id.* 1321. In 3 Chitty's Crim. L. 1141, it is said, that to render the offence complete, there is no occasion that any act should be done in pursuance of the unlawful agreement entered into between the parties; still less can it be necessary to show that any party was actually defrauded; for the conspiracy is the essence of the charge, and, if that be proved, the defendant will be convicted.

It is usual to set out the overt acts, such as may have been done by any one or more of the conspirators in order to affect the common purpose of the conspiracy, but this is not essentially necessary. Rex *v.* Gill, 2 Barn. and Ald. 204; 2 Burr. 993; 3 *id.* 1321; Starkie's Crim. Pl. 170-1; 4 Wendell 264.

What we have said disposes of another point made by defendants' counsel, viz: That the third count of the indictment is bad, as being too general. The forms given in 3 Chitty's Crim. L. 1185, embrace the general count contained in this indictment. It states the object and the intent. 3 Chitty's Crim. L. 1143.

Thus we understand the common law to be upon all these points. In the case of the People *v.* Lambert, it was strongly urged by Senator Spencer, that unless the means by which the fraud was effected were set out in the indictment, the defendant would have no means of knowing for what he was to be tried, until the moment when the public prosecutor opens his testimony on the trial; that it opens the way to general and indefinite charges; that such an indictment ought not to be sustained in a country which regards every citizen as composing a part of its sovereignty. But the reply of Senator Stebbins is unanswerable. Referring to Chitty and Russel, he says, these authorities are quite sufficient to establish the proposition that the offence consists in the act of combining unlawfully; that where the object is unlawful the offence is complete, whether the means of execution were agreed upon or not; that it is not requisite those means should form any part of the agreement, unless the agreement is thereby rendered unlawful. If, then, a confederacy to do an unlawful act, although no means be agreed upon, is indictable, it follows, that in an indictment for such an offence, where the means were agreed upon, it would be unnecessary to state them, because they form no part of the offence; it is complete without them. In the one case the means could not be set out; in the other it would as certainly be unnecessary.

The question whether the common law should be altered by statutory provision, restricting indictments for conspiracy to defraud an individual, to cases where the object is to commit an offence, or where the means are criminal, as has been done in New York, must be determined elsewhere.

*Certified accordingly.*