(No. 20705.—

THE PEOPLE *ex rel.* William Sammons, Petitioner, *vs.* HENRY HILL, Warden of the State Penitentiary, Respondent.

*Opinion filed June 18, 1931—Rehearing denied October 8, 1931.*

EVERETT JENNINGS, W. W. SMITH, and MILTON D. SMITH, (FRANKLIN J. STRANSKY, and MICHAEL J. AHERN, of counsel,) for petitioner.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and Q. J. CHOTT, (MERRILL F. WEHMHOFF, JOHN P. MADDEN, and J. J. NEIGER, of counsel,) for respondent.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

An original petition in the name of the People of the State on the relation of William Sammons, alleging that James Sammons was illegally imprisoned in the Illinois State Penitentiary at Joliet and seeking his release by means of a writ of *habeas corpus* directed to Henry Hill, the warden and general superintendent of the penitentiary, was filed in this court. The writ was issued, the respondent made a return thereto, and the petitioner filed an answer and traverse to the return, and also a motion to discharge the prisoner from custody. The cause is submitted upon the record thus made.

On June 26, 1903, an indictment, consisting of a single count, was returned in the criminal court of Cook county, charging James Sammons, John Lynch and Hugh Reilly with the robbery of Michael Larner, while they were armed with a dangerous weapon with the intent, if resisted, to kill and maim Larner. A jury trial followed and on February 8, 1904, each of the defendants was found guilty. The verdict with respect to Sammons was as follows: "We, the jury, find the defendant James Sammons guilty of robbery, in manner and form as charged in the indictment, and we the jury further find that at the time that the defendant committed the said robbery, he was armed with a deadly weapon, with intent to kill and maim if resisted, in manner and form as charged in the indictment." On

February 13, 1904, the motions of Sammons and his two co-defendants for a new trial and in arrest of judgment were denied and each was "sentenced to the penitentiary of this State, at Joliet, for the crime of robbery, etc., whereof he stands convicted .* * * until discharged by the State Board of Pardons as authorized and directed by law, provided such term of imprisonment in said penitentiary, shall not exceed the maximum term for the crime for which the said defendant was convicted and sentenced."

Sammons, Lynch and Reilly were also indicted in the criminal court of Cook county for the murder of Patrick Barrett, and on February 25, 1904, a jury found them guilty as charged, and fixed the punishment of Sammons and Lynch at death and of Reilly at imprisonment in the penitentiary for life. Judgments were rendered on the several verdicts and the court fixed June 17, 1904, as the day on which Sammons and Lynch were to be executed. On June 16, 1904, the Governor commuted Sammons' sentence to life imprisonment in the penitentiary, and on the next day, the Governor's commutation and the *mittimus* issued upon Sammons' conviction for robbery were delivered to the warden of the penitentiary and Sammons began his term of imprisonment on that day.

Nineteen years later, on June 20, 1923, a second commutation was granted by which the term of Sammons' imprisonment upon his conviction for murder was reduced to fifty years. The Division of Pardons and Paroles of the Department of Public Welfare, on July 23, 1923, entered an order for his temporary and conditional parole from the penitentiary, and on January 28, 1926, ordered his final discharge "for and on account of his conviction" for murder. The second order was approved by the Governor and Sammons was given his liberty.

Subsequently, on November 26, 1930, the Division of Pardons and Paroles entered an order expunging and holding for naught the order of July 23, 1923, granting Sam-

mons a temporary and conditional parole and the order of January 28, 1926, granting him a final discharge upon his conviction for murder. By the same order of November 26, 1930, the warden was directed to issue a warrant for Sammons' return to the penitentiary. The warrant was issued, Sammons was apprehended and he was returned to the penitentiary on the next day, November 27, 1930. No commutation of the sentence imposed upon Sammons for robbery was ever granted and no order of any character was ever entered by the Division of Pardons and Paroles, or its predecessor, with respect to that conviction.

A number of contentions are made in support of the petitioner's motion to discharge the prisoner from the custody of the respondent. These contentions may be reduced to three: First, that the criminal court of Cook county, by the judgment rendered May 28, 1904, imposing the death sentence upon Sammons, abandoned or abrogated its prior judgment of February 13, 1904, sentencing him to the penitentiary for robbery, or, in any event, that the latter sentence was absorbed by or ·merged in the sentence for murder; second, that even if the sentence for robbery remained effective, the maximum punishment that could be inflicted for that offense was imprisonment in the penitentiary for the period of fourteen years, which necessarily began on June 18, 1904, when Sammons became a prisoner, and expired on June 18, 1918, long prior to his parole from the penitentiary; and third, that the successive orders of the Division of Pardons and Paroles admitting Sammons to parole and granting him a final discharge from custody are valid and binding and that the subsequent order expunging and holding the earlier orders for naught is void and that there is no legal warrant or authority for Sammons' detention in the penitentiary to serve any portion of either sentence. The respondent answers the petitioner's contentions by insisting, first, that the sentence for robbery was not abandoned or abrogated by or merged in the sub-

sequent conviction for murder; second, that Sammons was convicted of robbery in the aggravated form for which the maximum punishment is imprisonment in the penitentiary for life, and third, that there was no commutation of the sentence for robbery, nor was Sammons paroled or discharged from imprisonment for that offense, and hence his release from the penitentiary was wholly unauthorized and the respondent, in the performance of his legal duty, was obliged to return him to and detain him in that institution.

The contention of the petitioner that the sentence for robbery was abandoned or abrogated by the subsequent conviction of Sammons for murder and the imposition of the death sentence therefor cannot be sustained. The crimes charged, as well as the indictments against Sammons, and his trials and convictions were entirely distinct and separate. If there had been an abandonment or abrogation of the earlier conviction for robbery, the *mittimus* issued upon that judgment or sentence would not have been delivered to the warden of the penitentiary and Sammons would not have begun to serve his sentence under it.

The claim that the earlier conviction was absorbed by or merged in the later conviction is likewise untenable. The judgments in the two cases were as distinct as the offenses charged in the indictments upon which the judgments were based. Even before the first of the two judgments was rendered, there could have been no merger of the distinct crimes of robbery and murder. The merger of one offense in another occurs when the same criminal act constitutes both a felony and a misdemeanor. In such a case, at common law, the misdemeanor is merged in the felony, and the latter only is punishable. The rule applies only where the same criminal act constitutes both offenses, and there is identity of time, place and circumstances. The offenses must be of different grades, and the rule has no application where both crimes are misdemeanors or both are felonies, although one may be of a much graver character than

the other and punishable with much greater severity. *Bell* v. *State*, 48 Ala. 684; *State* v. *Setter*, 57 Conn. 461; *Graff* v. *People*, 208 Ill. 312; *Gilpin* v. *State*, 142 Md. 464, 121 Atl. 354; *People* v. *Richards*, 1 Mich. 216; *People* v. *Mather*, 4 Wend. (N. Y.) 229; 16 Corpus Juris, 59; 8 R. C. L. 54.

The first commutation granted by the executive power changed the punishment which Sammons should suffer for the murder of which he was convicted from the death penalty to life imprisonment. By the second commutation, the term of his imprisonment for that offense was fixed at fifty years. Both commutations expressly recited his conviction for murder and neither made any reference to his conviction for robbery. By the order of the Division of Pardons and Paroles made on July 23, 1923, Sammons was granted a temporary and conditional parole, but the board did not, by that order, surrender control of the prisoner. The subsequent order for his final discharge, by its terms, related solely to his conviction for murder. There was therefore neither a commutation of sentence by the Governor nor an order by the Division of Pardons and Paroles respecting Sammons' sentence for the crime of robbery, and that sentence remained wholly unaffected by the orders or proceedings which concerned only his conviction for murder.

To escape the conclusion that the sentence for robbery continued in effect as pronounced by the criminal court, notwithstanding the commutations and orders affecting the sentence for murder, the petitioner argues that Sammons was convicted of robbery simply and not robbery while armed with a dangerous weapon with intent, if resisted, to kill or maim; that at the time the crime was committed, the maximum punishment for the former was imprisonment in the penitentiary for fourteen years and for the latter imprisonment for life; that Sammons had been imprisoned more than fourteen years when, by the order of

July 23, 1923, he was temporarily and conditionally paroled, and that, so far as the sentence for robbery is concerned, he was entitled to his release from the penitentiary prior to the making or entry of that order. The maximum terms of imprisonment for robbery when Sammons was convicted of that crime were, and still are, determined by the character of the offense, and since the period of his imprisonment in the penitentiary exceeded the maximum punishment for robbery unarmed, it becomes necessary to inquire whether his conviction was for the aggravated offense.

The rule is, that in determining the sufficiency of a verdict and a judgment of conviction based thereon, the entire record will be searched and all parts of the record interpreted together, and a deficiency at one place may be cured by what appears at another. (*People* v. *Murphy,* 188 Ill. 144; *People* v. *Tierney,* 250 id. 515; *People* v. *Hildebrand,* 307 id. 544; *People* v. *Pleitt,* 308 id. 323). The indictment charging Sammons and his two confederates with the crime of robbery concluded with the allegation that they were armed with "a certain dangerous weapon, to-wit, a certain revolver" with the intent, if resisted, to kill or maim Michael Larner. The jury, by their verdict, not only found Sammons guilty but added the finding that at the time he committed the robbery, "he was armed with a deadly weapon with intent to kill or maim if resisted, in manner and form as charged in the indictment." The court approved the verdict by overruling the motion for a new trial and sentenced Sammons to the penitentiary "for the crime of robbery, etc., whereof he stands convicted."

The indictment charged and the jury, by their verdict, found that Sammons had committed the aggravated offense of robbery. The verdict, by the rendition of judgment upon it, determined not only the character of the crime, but also the maximum term of imprisonment. (*People* v. *Secco,* 303 Ill. 546). The punishment prescribed for the crime of robbery while armed with a dangerous weapon with in-

tent, if resisted, to kill or maim the victim, at the time of Sammons' conviction, was imprisonment in the penitentiary for any term of years or for life. (2 Jones & Addington's Ill. Stat. Ann. pp. 2150, 2151). Sammons was sentenced to imprisonment in the penitentiary for a term which "shall not exceed the maximum term for the crime for which the said defendant was convicted and sentenced." The sentence was governed by the provisions of the Parole act then in effect, and the sentence was for the maximum term of imprisonment prescribed by law. (*People* v. *Peters,* 246 Ill. 351; *People* v. *Campbell,* 246 id. 432; *People* v. *Connors,* 291 id. 614). In the absence of action by or under the authority of the executive power releasing or discharging Sammons from the sentence of imprisonment for life imposed upon his conviction for robbery, he must continue to serve that sentence. He is therefore remanded to the custody of the respondent.

*Prisoner remanded.*