THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PEDRO ALBIZU CAMPOS, Defendant and Appellant.

No. 15345. Argued June 3, 1953.—Decided January 28, 1955.

852

*F. Hernández Vargas* and *J. Hernández Vallé* for appellant. *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán, Assistant Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Pedro Albizu Campos was prosecuted and convicted in several criminal prosecutions filed against him for violations of the laws of Puerto Rico, among them the following: (1) violation of § 12 of Act No. 67 of May 13, 1934, as amended, consisting in having in his possession, on November 2, 1950, two homemade dynamite bombs with the intent to use them for the purpose of inflicting bodily injury upon, and to terrify and frighten, people and to injure and destroy property, being sentenced in said cause to serve a term of two and a half years in jail; (2) violation of § 11 of the aforesaid Act No. 67 consisting in having used dynamite on October 31, 1950, for the purpose of inflicting bodily injury on, and to terrify and frighten people and to injure and destroy property, by throwing several homemade dynamite bombs after lighting the fuses thereof, at several members of the Insular Police, being sentenced in said cause to serve a sentence of six years' imprisonment in jail; (3) three violations of Act No. 14 of July 8, 1936, as amended by Act No. 95 of May 12, 1937, for having in his possession without registering, pursuant to said Act, each one of three firearms—two revolvers and a pistol—being sentenced for said three violations to serve nine months in jail on the first count, one year in jail on the second count and six months in jail on the third count.

Feeling aggrieved, defendant appealed to this Court in each one of said causes, and in the brief in support of his appeals he assigns the following errors of the trial court (1) in holding that the supporting affidavit was sufficient for

the search warrant, and in admitting in evidence the fire-arms seized and in declaring defendant guilty of the illegal possession thereof; (2) in finding him guilty of a violation of § 12 of Act No. 67 of May 13, 1934 on the illegal *possession* of explosives and (3) in finding him guilty of a violation of § 11 of the same Act on the illegal *use* of explosives.

Appellant bases his first assignment of error, concerning the insufficiency of the affidavit, on the ground that Astol Calero Toledo, the officer who made it, referred therein to facts and circumstances which had taken place three days before and "which could have justified an arrest or counter-attack at the time," but which are insufficient to authorize the search because he did not state under oath that the situation described by him in the affidavit might be repeated; because he did no swear to the existence of any cause to fear the commission of offenses or that there were bombs, fire-arms or any other deadly weapon in defendant's house. He further contends that the search of his residence was void because he was not shown the warrant nor was he notified when the search was made, and because he was not informed of the result or given a copy of the inventory or taken before a magistrate.

The affidavit of the officer Astol Calero, by virtue of which the search warrant was issued, was the following:

"That on October 30, 1950, while rendering services at Sol St. corner of Cruz, together with Detective Meléndez, I could observe that from the residence of Mr. Pedro Albizu Campos, which is also the Central Office of the National Board of the Nationalist Party of Puerto Rico, Mr. Pedro Albizu Campos, from the window of the session room of the Nationalst Club, threw a homemade bomb at the Insular Police car which detective Meléndez was trying to park at the time; that said bomb did not explode. Immediately thereafter Mr. Pedro Albizu Campos lighted a similar bomb, throwing it again at the Insular Police car destroying the right side of the windshield. That this bomb did not explode either. From the other window

a man later identified as Juan José Muñoz Matos, fired at the automobile with a small black revolver, and the bullet hit the pavement. That Doris Torresola was with Pedro Albizu Campos and was also throwing bombs similar to his from the same window; that these bombs did not explode either. Albizu Campos threw a bottle, of the kind used in bottling rum, with a strip of cloth tied around the neck of the bottle against the police car. The bottle broke when it fell next to the car. From within Albizu Campos' house, 12 bombs and two of the aforesaid bottles were thrown. Also shots were fired at the police.

"That the residence of Albizu Campos is described as follows: a second story of building No. 156 of Sol St. in the corner of Cruz St. of the City of San Juan, Puerto Rico. This story has three doors which face Sol St., two of them with two small porches and a railing balcony. It also has two doors on the eastern side facing Cruz St., both with balconies. The whole building is made of stone and bricks roofed with the same material; it has two stories and a mirador. The building is tan and brown with brown doors. The stairway which is spiral and leads to the second floor and to the mirador is located on the western side of the building at Sol St. The "Bar La Borinqueña" is located in the first story of this building in the northern side and is owned by Mr. Saúl Sanabria and the fish stand "El Tercer Frente" owned by Mr. Diego Lugo is on the southern side, with a door facing Cruz St. In this second story, which is the residence of Pedro Albizu Campos, there is also the Club of the Nationalist Party of Puerto Rico, and it has a big zinc sign which reads 'Partido Nacionalista de Puerto Rico, Junta Nacional' (Nationalist Party of Puerto Rico, National Board) and the flag of Puerto Rico hangs from a flagstaff facing Cruz St."

At the time that said warrant was issued and the search executed, a citizen's right to be secure against unreasonable searches was provided for by § 2 of the Organic Act then in force, 48 U.S.C.A., § 737, which insofar as pertinent provided: "The right to be secure against unreasonable searches and seizures shall not be violated" and "No warrant for arrest or search shall issue but upon probable cause, supported by

oath, or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[1]

. The Code of Criminal Procedure of Puerto Rico under the title "Of Search Warrant" provides the form and manner of issuing and serving such warrants.[2]

The determination of probable cause is a function of the judicial authority. *People* v. *Capriles*, 58 P.R.R. 551. That function cannot be delegated and no reference must be made to the opinion, belief or conclusions of the applicant in that determination. *State* v. *District Court*, 198 Pac. 362. In the first paragraph of the affidavit of officer Calero his personal observations and opinion concerning facts perceived by his own senses are set forth. The fact that said affidavit was made on November 2, 1950, and the events set forth therein took place on October 30 of that same year, does not vitiate the warrant for insufficiency of the affidavit—by virtue of which it was obtained—to establish probable cause, nor was it necessary for the applicant to state—as appellant contends—that there existed probable cause, or to express his belief that the situation described by him would continue, or

---

[1] *"Motivo fundado"* (justified reason) which is used in the Spanish translation is equivalent to "probable cause" used in the English text. See *Figueroa* v. *District Court*, 72 P.R.R. 23, 28.

[2] Sections 503, 504, 505, and 506 of the Code of Criminal Procedure provide:

"Section 503.—A search warrant can not be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched.

"Section 504.—The justice of the peace must, before issuing the warrant, examine on oath the complainant, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them.

"Section 505.—The depositions must set forth the facts tending to establish the ground of the application, or probable cause for believing that they exist.

"Section 506.—If the justice of the peace is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a peace officer in his district, commanding him forthwith to search the person or place named, for the property specified, and to bring it before the justice of the peace."

that there were bombs, firearms or other deadly weapons, in order that the judge from whom it was requested could issue the warrant. Probable cause arose from the facts set forth in said affidavit, for they not only implied the reasonable probability of the existence of the firearms or artifacts in defendant's residence, to be used as a means to commit a public offense—§ 502, paragraph 3, Code of Criminal Procedure—but the commission of felonies was actually disclosed—§ 502, paragraph 2—by the use of firearms and dynamite bombs, the judge who issued the warrant being convinced by virtue of said evidence that in the residence of the defendant "there are firearms as well as bombs and other explosive material", which he ordered to be seized. Section 506, *supra*, footnote 2. See *Silver* v. *State*, 8 S. W. 2d 144; 9 S. W. 2d 358, 60 A.L.R. 290.

■■ Our statute does not provide for a specific period of time, after the occurrences, within which the affidavit supporting the search warrant should be made. Said affidavit, however, must set forth facts so closely related to the time of the issue[3] of the warrant as to justify a conclusion of probable cause at that time, *Sgro* v. *United States*, 287 U. S. 206, 77 L. Ed. 260. That is why an affidavit should be made within a reasonable time after the affiant becomes acquainted with the facts reported therein, it being part of the judicial function, in determining whether there is probable cause, to judge, in each case, whether the facts set forth are so remote that they do not render probable the existence of cause for the search. See the Annotations in 162 A.L.R. 1411 and 1414

---

[3] Our Code of Criminal Procedure in its § 512 provides that a search warrant must be executed and returned within ten days after its date. That is an indication that the law considers that during said period the motive or probable cause on which the warrant was based subsists. See to that effect *Sgro* v. *United States*, cited in the text of this opinion, as well as to the effect that a second search warrant cannot be issued on the same showing of probable cause which formed the basis for the issuance of the first warrant after the first has become void because not executed within ten days after its date; but there must be additional proof of probable cause existing at the time of issuing the second warrant. See 85 A.L.R. 108 and 74 A.L.R. 1516.

*et seq.* In the instant case the facts set forth by the applicant are not remote since they took place only three days before the affidavit was made. That is why we cannot agree with appellant in his argument that because the affidavit was made three days after the occurrences, the warrant issued by virtue thereof is void.

■ Appellant also contends that for a search to be valid it is an essential requirement that the warrant be exhibited to the person against whom it is directed at the time of making the search. Unless the statute so provides, an officer charged with the execution of a lawful warrant therefor is not obliged to exhibit the warrant as a prerequisite to his right to execute the writ, *State* v. *Brown*, 114 S. E. 372. See 27 A.L.R. 756. Even under statutes which contain such a requirement, the latter has been regarded as directory rather than mandatory. *Nordelli* v. *United States*, 24 F. 2d 665; *Giacalone* v. *United States*, 13 F.2d 108; *United States* v. *Kaplan*, 286 Fed. 963; *Justice* v. *State*, 18 S. W. 2d 657. In the case at bar, the peace officer to whom the warrant was addressed could give no "notice of his authority and purpose", § 509, of the Code of Criminal Procedure [4] inasmuch as when the search was made—eight o'clock in the morning of November 2, 1950—the defendant was at the Police Headquarters, under arrest, having been arrested at three or four o'clock in the morning of that same day, without there being any other person in possession or in charge of the property.

According to the evidence, the arrest by virtue of the warrants issued for said purpose was executed in the early hours of the morning of November 2 when appellant was leaving the Club of the Nationalist Party located in his own house—after the police had thrown several tear gas bombs inside—at the intersection of Cruz and Sol streets, in San Juan. Appellant was arrested there and taken to the Police Headquarters and

---

[4] "Section 509.—The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if after notice of his authority and purpose, he is refused admittance."

the police waited from the time of the arrest at 3:15 A. M. until 8:00 A. M. of that same day because the place to be searched was full of gas from the tear gas bombs and they believed that there might still be armed persons within. At all times, the building and its entrance were under the strict vigilance of the police. This being the situation, and since defendant was not present because of his previous arrest and transfer to another place the impediment to serve the warrant at the time of the search is obvious. See *Goodman* v. *State*, 178 Md. 1, 11 A. 2d 635.

██ ██ Neither is the search void because the officer who executed it failed to give to the defendant a receipt for the property taken, pursuant to § 513 of the Code of Criminal Procedure.[5] Said requirement is directory and its absence is not fatal. *United States* v. *Kaplan, supra; Cf. People* v. *Tonje*, 71 P.R.R. 295. On the other hand, the inventory required by § 515 [6]—whose provisions are purely ministerial requisites, *People* v. *Rodríguez*, 73 P.R.R. 310—was also made and sworn to by the aforesaid officer on November 2 before the judge who issued the warrant, when the officer returned it. Inasmuch as defendant was not present when it was returned, he could have required, pursuant to § 516,[7] that a copy of said inventory be delivered to him. *People* v. *Rodríguez, supra.*

---

[5] "Section 513.—When the officer takes property under the warrant, he must give a receipt for the property taken (specifying it in detail) to the person from whom it was taken by him, or in whose possession it was found; or in the absence of any person, he must leave it in the place where he found the property."

[6] "Section 515.—The officer must forthwith return the warrant to the justice of the peace, and deliver to him a written inventory of the property taken, made publicly or in the presence of the person from whose possession it was taken, and of the applicant for the warrant, if they are present, verified by the affidavit of the officer at the foot of the inventory, and taken before the justice of the peace at the time, to the following effect: 'I, . . . (the officer by whom this warrant was executed), do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant.' "

[7] "Section 516.—The justice of the peace must thereupon, if required, deliver a copy of the inventory to the person from whose possession the property was taken, and to the applicant for the warrant."

Irrespective of the result at which we have previously arrived, we believe that the search, even if executed four or five hours after appellant's arrest—under the aforementioned circumstances—may be considered as a search incidental to a valid arrest, and the public officers were entitled to search the house for fruits of the crime or for the means by which it was committed in their presence. *People* v. *Ríos*, 71 P.R.R. 908; *People* v. *Chiagles*, 142 N. E. 583. The evidence displayed a belligerent attitude and a continuous aggressiveness on the part of the defendant and other members of the Nationalist Party who were with him in his residence —and club of said organization—by means of attack with bombs and firearms, not only on October 30, but subsequently, the police having to resort to the use of tear gas bombs in order to arrest him and his companions. The fact that such attacks on the peace officers might have "justified an arrest or a counter-attack at the time"—as appellant contends—and that this was not done in order to prevent the loss of lives and to protect the life of appellant himself, does not mean that the arrest could not be executed—having in mind the danger pointed out—as soon as the danger seemed to have disappeared. Consequently, as a result of a search supported by a warrant as well as a search incidental to a valid arrest—for which the proper warrants were issued—the seizure of the bombs, firearms and other objects which the officers seized was legal and the trial court did not err in admitting them in evidence.

Appellant contends, in arguing his second assignment of error, that inasmuch as he was prosecuted and convicted of a violation of § 11 of Act No. 67, *supra*,[8] concern-

---

[8] Said Section provides: "Any person unlawfully using dynamite or other explosive for the purpose of inflicting bodily injury upon, or to terrify and frighten any person, or to injure or destroy any property, or to damage the same in any manner, shall be liable, upon conviction, to pay a fine of not less than two hundred fifty (250) dollars, nor more than five thousand (5,000) dollars, or to imprisonment at hard labor for a term of not less than one (1) year and not to exceed twenty (20) years."

ing the *use* of explosives, he could not be prosecuted and sentenced for a violation of § 12 of said Act,[9] concerning the *possession* thereof, inasmuch as the elements of the offense provided for by § 12 are present in and are merged with the offense provided for by § 11.

Appellant reckons from a wrong premise. These are two separate and different offenses, each one within its own criminal sphere, and consummated at different times.[10] The facts for which defendant was accused of a violation of § 11 —use of dynamite—took place on October 31, 1950, as charged in the information and established by the evidence, upon the throwing of several homemade dynamite bombs on the aforesaid date at several members of the Police; while the violation of § 12—possession of dynamite—as charged in the information and established by the evidence, took place on November 2, 1950, upon the finding in his residence of other unused dynamite bombs. This is not the case of one information for the *use* and another for the possession of the same bombs. Therefore, the theory on which appellant predicates his assignment of error, that is, the merger of offenses, does not apply herein. Appellant's argument to the effect that what § 12 punishes is the possession of dynamite, irrespective of the quantity or form or units possessed, and that the two bombs for which he was convicted under § 11 in using them against the police, were part of the dynamite possessed, and that therefore said *possession* was an ingredi-

---

[9] Said Section provides: "Any person who shall have in his possession dynamite or other explosive chemical or substance, with intent to use the same for the purpose of inflicting bodily injury on, or to terrify and frighten any person, or to injure or destroy any property, or to damage the same in any manner, shall be liable, on conviction, to pay a fine of not less than one hundred fifty (150) nor more than three thousand (3,000) dollars or to imprisonment at hard labor for a term of not less than six (6) months and not to exceed five (5) years."

[10] The doctrine of the merger of offenses has no application where both crimes are of the same grade, that is, when both are felonies or both misdemeanors (as here) though one may be punishable with much greater severity than the other. *Gilpin* v. *State*, 142 Md. 464, 121 Atl. 354; *People ex rel Sammons* v. *Hill*, 345 Ill. 103, 177 N. E. 723.

ent of the offense of *use*, cannot prosper, for that would mean that the illegal use of part of the dynamite, in violation of § 11, sanctioned the illegal possession of the rest of the unused dynamite, the possession of which was continued. That would be tantamount to holding that henceforth the possession of the rest of the dynamite is not an offense. Contrary to such assertion, the offense of illegal possession continues throughout the entire time that the same is possessed for the purpose of causing damage. This assignment, therefore, is dismissed.

 The third assignment of error will also be dismissed. His argument that since he was convicted of an attack to commit murder by throwing two homemade bombs at the police —facts which appellant himself states took place at noon of October 30, 1950—he could not be accused also of a violation of § 11 of the aforecited Act No. 67 for the *use* of dynamite in throwing two other bombs at the police on the 31st of said month and year, cannot prosper. It is not the case of the same transaction. They are different acts, prompted at separate times and taking place with a sufficient interval to give rise to the consequences intended to be achieved in each one of them. See in this respect *People* v. *Negrón*, *ante*, p. 741.

Inasmuch as the trial court did not commit the errors set forth by appellant in his brief, the judgments will be affirmed.

Mr. Chief Justice Snyder did not participate herein.