Jack Robert PURDOM, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 5651.

United States Court of Appeals
Tenth Circuit.

Oct. 14, 1957.

Writ of Certiorari Denied Jan. 6, 1958.
See 78 S.Ct. 341.

Joseph P. Jenkins, Kansas City, Kan., for appellant.

Milton P. Beach, Asst. U. S. Atty., Kansas City, Kan. (William C. Farmer, U. S. Atty., Topeka, Kan., Charles W. Ward, Asst. U. S. Atty., Peabody, Kan., E. Edward Johnson, Asst. U. S. Atty., Topeka, Kan., and Wilbur G. Leonard, Asst. U. S. Atty., Council Grove, Kan., on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

PHILLIPS, Circuit Judge.

An information containing three counts was filed against Purdom in the

United States District Court for the District of Kansas on March 10, 1947. Count One charged that on January 9, 1947, Purdom entered the Ramona State Bank in the District of Kansas, an insured bank of the Federal Deposit Insurance Corporation, with the intent to commit larceny in such bank. Count Two charged that on the same date he did take and carry away with intent to steal the same, $591.95 in money belonging to such bank. Count Three charged that on the fourth day of January, 1947, he transported a stolen motor vehicle from Muskogee, Oklahoma, to Ramona, Kansas, and that he then knew the motor vehicle to have been stolen. Purdom entered a plea of guilty to each count. The court imposed a sentence of imprisonment for a term of 20 years on Count One and imprisonment for a term of 10 years on Count Two, to begin at the expiration of the sentence on Count One, and imprisonment for a term of 5 years on Count Three, to run concurrently with the sentences imposed on Counts One and Two.

On May 8, 1957, Purdom filed a motion to vacate and set aside the sentence imposed on Count One, on the ground that he was subject to imprisonment on Counts One and Two for not more than a term of 10 years.

On May 16, 1957, the trial judge granted the motion and sentenced Purdom nunc pro tunc to the custody of the Attorney General for a period of 20 years on Count One and set aside the plea of guilty on Count Two and the sentence on Count Two. The court further sentenced Purdom to imprisonment for a term of 5 years on Count Three, to run concurrently with the 20-year sentence imposed on Count One. From the judgment of the court imposing the last sentence, Purdom has appealed.

In Jerome v. United States, 318 U.S. 101, 102, 63 S.Ct. 483, 484, 87 L.Ed. 640, the Supreme Court reviewed the legislative history of the Act of May 18, 1934, 48 Stat. 783, 12 U.S.C.A. § 588(b) and the Act of August 24, 1937, 50 Stat. 749, 12 U.S.C.A. § 588(b), as follows:

"Prior to 1934 banks organized or operating under federal law were protected against embezzlement and like offenses by R.S. 5209, 40 Stat. 972, 12 U.S.C. § 592, 12 U.S.C.A. § 592. But such crimes as robbery, burglary, and larceny directed against such banks were punishable only under state law. By 1934 great concern had been expressed over interstate operations by gangsters against banks—activities with which local authorities were frequently unable to cope. H.Rep. No. 1461, 73d Cong., 2d Sess., p. 2. The Attorney General in response to that concern recommended legislation embracing certain new federal offenses. S. 2841, 73d Cong., 2d Sess. And see 78 Cong.Rec. 5738. Sec. 3 of that bill made it a federal crime to break into or attempt to break into such banks with intent to commit 'any offense defined by this Act, or any felony under any law of the United States or under any law of the State, District, Territory, or possession' in which the bank was located. Sec. 2 made it an offense to take or attempt to take money or property belonging to or in the possession of such a bank without its consent or with its consent obtained 'by any trick, artifice, fraud, or false or fraudulent representation'. This bill was reported favorably by the Senate Judiciary Committee (S.Rep. No. 537, 73d Cong., 2d Sess.) and passed the Senate. 78 Cong.Rec. 5738. The House Judiciary Committee, however, struck out § 2, dealing with larceny, and § 3, dealing with burglary. H.Rep. No. 1461, supra, p. 1. And the bill was finally enacted without them. But it retained the robbery provision now contained in the first clause of § 2 (a) of the Bank Robbery Act.

"In 1937 the Attorney General recommended the enlargement of the Bank Robbery Act 'to include larceny and burglary of the banks protected by it. H.Rep. No. 732, 75th

Cong,, 1st Sess., p. 1. The fact that the 1934 statute was limited to robbery was said to have produced 'some incongruous results'—a 'striking instance' of which was the case of a man who stole a large sum from a bank but who was not guilty of robbery because he did not display force or violence and did not put any one in fear. Id., pp. 1–2. The bill as introduced (H.R. 5900, 75th Cong., 1st Sess., 81 Cong.Rec. 2731) added to § 2(a) two new clauses—one defining larceny and the other making it a federal offense to enter or attempt to enter any bank with intent to commit therein 'any larceny or other depredation'. For reasons not disclosed in the legislative history, the House Judiciary Committee substituted 'any felony or larceny' for 'any larceny or other depredation.' H.Rep. No. 732, supra, p. 2. With that change and with an amendment to the larceny clause distinguishing between grand and petit larceny (81 Cong.Rec. 5376–5377), § 2(a) was enacted in its present form."

The Act of May 18, 1934, supra, defined the term "bank" as follows:

"That as used in this Act the term 'bank' includes any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States."

The pertinent provisions of the Act of August 24, 1937, supra, read as follows:

"That subsection (a) of section 2 of the Act of May 18, 1934, (48 Stat. 783, U.S.C., title 12, sec. 588b), be and the same is hereby, amended to read as follows:

" '(a) Whoever, by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank; or whoever shall enter or attempt to enter any bank, or any building used in whole or in part as a bank, with intent to commit in such bank or building, or part thereof, so used, any felony or larceny, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $1,000 or imprisoned not more than one year, or both.' "

As carried into Title 18 U.S.C., Crimes and Criminal Procedure, approved June 25, 1948, effective September 1, 1948, such provisions were amended to read as follows:

"§ 2113. Bank robbery and incidental crimes

"(a) Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank; or

"Whoever enters or attempts to enter any bank, or any building used in whole or in part as a bank, with intent to commit in such bank or building, or part thereof, so used, any felony affecting such bank and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,- 000 or imprisoned not more than twenty years, or both.

"(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; * * *." [1]

In Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370, the court construed the penalty provisions of § 2113(a), supra. Prince was convicted on a two-count indictment. The first count charged robbery of a Federally insured bank and the second count charged entering the bank with intent to commit a felony. He was sentenced to 20 years' imprisonment for the robbery and 15 years for the entry with intent to commit a felony, the two sentences to run consecutively. Thereafter, Prince filed a motion to vacate or correct the sentence. The trial court denied the motion and the Fifth Circuit affirmed. See Prince v. United States, 5 Cir., 230 F.2d 568. In Prince v. United States, 352 U.S. 322, 324-329, 77 S.Ct. 403, 405, the court said:

"Whether the crime of entering a bank with intent to commit a robbery is merged with the crime of robbery when the latter is consummated has puzzled the courts for several years. A conflict has arisen between the circuits. * * * *The question of interpretation is a narrow one, and our decision should be correspondingly narrow.* (Italics ours.)

"The original Bank Robbery Act was passed in 1934. It covered only robbery, robbery accompanied by an aggravated assault, and homicide perpetrated in committing a robbery or escaping thereafter. In 1937 the Attorney General requested that the Act be amended. In his letter proposing the bill, the Attorney General declared that 'incongruous results' had developed under the existing law. He cited as a striking instance the case of

"' * * * a man [who] was arrested in a national bank while walking out of the building with $11,000 of the bank's funds on his person. He had managed to gain possession of the money during a momentary absence of one of the employees, without displaying any force or violence and without putting anyone in fear—necessary elements of the crime of robbery—and was about to leave the bank when apprehended. As a result it was not practicable to prosecute him under any Federal statute.'

"The Act was amended accordingly to add other crimes less serious than robbery. * * *

* * * * * *

"' * * * No separate penalty clause was added for the crime of unlawfully entering. It was simply incorporated into the robbery provision.

"The Government asks us to interpret this statute as amended to make each a completely independent offense. It is unnecessary to do so in order to vindicate the apparent purpose of the amendment. The

1. The definition of the term "bank" was also amended to read as follows:

"(f) As used in this section the term 'bank' means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, a Federal Savings and Loan Association, or other banking institution organized or operating under the laws of the United States and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation."

It will be noted that the words "or

larceny" were omitted, so that the entering offense required the entry to be with intent to commit a "felony affecting" the bank. Thus, the entering offense became akin to common law burglary, with certain of the ingredients of the latter offense omitted. If the facts as to the entering in the instant case were as stated in the brief of the United States, all of the elements of common law burglary were present, except the building entered was not a dwelling house.

only factor stressed by the Attorney General in his letter to Congress was the possibility that a thief might not commit all the elements of the crime of robbery. It was manifestly the purpose of Congress to establish lesser offenses. But in doing so there was no indication that Congress intended also to pyramid the penalties.

"The Attorney General cited the situation of larceny to illustrate his position. It is highly unlikely that he would have wanted to have the offender given 10 years for the larceny plus 20 years for entering the bank with intent to steal. There is no reason to suppose that he wished to have the maximum penalty for robbery doubled by the imposition of 20 years for the robbery to which could be added 20 years for entering the bank. * * *

"It is a fair inference from the wording in the Act, uncontradicted by anything in the meager legislative history, that the unlawful entry provision was inserted to cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime. The gravamen of the offense is not in the act of entering, which satisfies the terms of the statute even if it is simply walking through an open, public door during normal business hours. Rather the heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated. To go beyond this reasoning would compel us to find that Congress intended, by the 1937 amendment, to make drastic changes in authorized punishments. This we cannot do. * * *

"*We hold, therefore, that when Congress made either robbery or an entry for that purpose a crime it intended that the maximum punishment for robbery should remain at 20 years, but that even if the culprit should fall short of accomplishing his purpose, he could be imprisoned for 20 years for entering with felonious intent.*" (Italics ours).

▆▆▆▆ Relying on the Prince case, Purdom contends that the unlawful entering offense merged into the larceny offense when the latter was committed. In effect, he admits that if he had not committed the larceny, but had only entered the bank with intent to commit a larceny therein, he would have been subject to imprisonment for a term of 20 years on the first count. He asserts, however, that since he went further after entering the bank and committed a larceny of money in excess of $50, he could only be sentenced for a term not to exceed 10 years. If the amount of money which he stole had been less than $50, by identical reasoning, he could have contended that he could only be sentenced to a term of 1 year.

Under the common law doctrine of merger of offenses, the merger of one offense into another occurs only when the same criminal act constitutes both a felony and a misdemeanor. Under that doctrine, in such a case the misdemeanor merges in the felony and the latter only is punishable. The rule does not apply where both offenses are felonies or misdemeanors.[2]

At the time the offense in the instant case was committed, a felony and a misdemeanor were defined as follows:

"All offenses which may be punished by death or imprisonment for a term exceeding one year shall be deemed felonies. All other offenses shall be deemed misdemeanors: * * *." 18 U.S.C. § 541 (1940 Ed.)[3]

Hence, both counts of the indictment in the Prince case charged felonies. Like-

2. People ex rel. Sammons v. Hill, 345 Ill. 103, 177 N.E. 723, 725; State v. Andrews, 108 Conn. 209, 142 A. 840, 842; 22 C.J.S. Criminal Law § 10, pp. 61-62.

3. The definitions, without substantial change, were carried into Title 18 U.S.C., Crimes and Criminal Procedure, Act of June 25, 1948 (18 U.S.C.A. § 1.)

wise, both Counts One and Two of the indictment in the instant case charged felonies. It seems clear to us, therefore, that the Supreme Court in its opinion in the Prince case was not applying the common law doctrine of merger of offenses. Rather, the court was seeking to ascertain the intent of Congress with respect to the punishment that might be imposed under § 2113(a), supra, where the defendant was convicted of entering a bank with intent to commit a felony affecting such bank and also of the offense of robbery. Likewise, our problem is to determine the intent of Congress with respect to the punishment that might be imposed under the Act of August 24, 1937, where the defendant was convicted of the offense of entering a bank with intent to commit in such bank a larceny and of the offense of larceny of money exceeding $50 in value belonging to such bank.

We are of the opinion that Congress, in order to cover all crimes against banks in the particular field dealt with, added the larceny provisions in the 1937 Act to cover a situation where a person entered a bank with no unlawful intent, but after entry formed an intent to commit and committed a larceny, or where a larceny was committed and the fact of entry with unlawful intent could not be established.

In the situation presented in the Prince case the statute (§ 2113(a), supra) prescribed as a penalty for robbery or for entry with intent to commit a felony a fine of not more than $5,000, or imprisonment for not more than 20 years, or both. However, in the instant case the Act of August 24, 1937, prescribed as a penalty for the offense of entering a bank with intent to commit a felony or larceny therein, a fine of not more than $5,000, or imprisonment for not more than 20 years, or both, and in a separate provision, for the offense of larceny of money or property exceeding $50 in value, a fine of not more than $5,000, or imprisonment for not more than 10 years, or both. If the statute is to be construed as contended by Purdom, then

if a defendant entered a bank with intent to commit a larceny, but his purpose was frustrated before committing the larceny, or, if before committing the larceny he repented of his criminal intent, he could be sentenced for a term not to exceed 20 years. On the other hand, if he went ahead after entering the bank and committed a larceny of property of value exceeding $50, he could be sentenced only for a term not to exceed 10 years and if the larceny was of property of value not exceeding $50, he could be sentenced only for a term of 1 year. We do not think Congress intended such an incongruous result. Rather, we think Congress intended that if a person entered a bank with intent to commit a larceny and after entering the bank committed a larceny of property of value exceeding $50, the maximum imprisonment sentence which could be inflicted is 20 years and not 10 years.

The Eighth Circuit so held in Kitts v. United States, 8 Cir., 243 F.2d 883, decided May 6, 1957. In that case the defendant was convicted under the Bank Robbery Act on two counts of a three-count indictment. The first count charged entry of the bank with intent to commit a felony affecting such bank, to-wit, a larceny of property of the bank exceeding $100 in value; and the second count charged larceny of property of the bank exceeding $100 in value. The defendant was sentenced to a term of imprisonment for 20 years on Count One and 10 years on Count Two. The Eighth Circuit, after reviewing the decision in the Prince case, held that the 20-year sentence was valid and directed that the 10-year sentence be vacated.

We conclude that the sentence of 20 years imposed on Count One in the instant case was valid.

Affirmed.

BRATTON, Chief Judge (dissenting).

It is my view that the decisive question upon which this case should turn is whether the act of entering the insured bank with the intent of committing larceny therein was merged into the com-

828

pleted act of stealing money belonging to the bank, not the effect which application of the doctrine of merger has upon the penalty. In Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370, it was expressly held that the gravamen of the offense of entering the bank was the intent to steal, and that such mental element was merged into the completed crime of robbery. If appropriate application of the doctrine of merger leads to the undesired result of less punishment than might otherwise be imposed, it is a matter to be corrected by Congress. I would reverse.