**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**David GOUDY and Cynthia King,
Defendants-Appellants.**

**Nos. 85–1646, 85–1647.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1985.

Decided June 6, 1986.

Joshua Sachs, Philip Krasay, Chicago, Ill., for defendants-appellants.

Ruben Castillo, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, Circuit Judge, ESCH-BACH, Senior Circuit Judge, and CAMP-BELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants King and Goudy were convicted of various offenses in connection with an elaborate check-kiting conspiracy which defrauded several banks in the Chicago area. Both defendants claim that numerous errors warrant reversal of their convictions. We affirm.

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

Defendant Goudy masterminded this scheme which operated from 1979 to 1981. Goudy studied bank procedures, particularly check-clearing timetables and interstate banking procedures, to learn how long it takes for a check deposited in one bank to be cleared through another bank. Having recruited people such as codefendant King to join the conspiracy, Goudy travelled from state to state with other coconspirators and opened bank accounts across the country. Back in Chicago, the conspirators opened bank accounts with a small cash deposit, deposited checks drawn on fictitious accounts at banks in other states, and then made large withdrawals from the local accounts before the bad out-of-state checks were returned.

Goudy and King were tried together. The evidence of the conspiracy came primarily from the testimony of conspirators who had pled guilty and testified pursuant to plea agreements. Bank officials and tellers who had dealings with the defendants testified about specific transactions alleged in the indictment. After a five-day trial, the jury found both defendants guilty on all counts. Both defendants appeal and raise several claims of error.

## I. CYNTHIA KING

King was convicted of one count of conspiracy to commit bank larceny in violation of 18 U.S.C. § 2113(b), two counts of causing a falsely made security to be transported in interstate commerce in violation of 18 U.S.C. § 2314, and one count of entering a bank with intent to commit a felony in violation of 18 U.S.C. § 2113(a). King was sentenced to six months in prison, probation for five years, and ordered to make restitution of $3,000.

King argues that the trial judge erred in refusing to hold an evidentiary hearing to determine whether a security guard for the First National Bank of Chicago was acting as an agent of the police in arresting King in December 1980. King claims that the lack of an evidentiary hearing prevented her from challenging certain unspecified "tacit admissions" apparently obtained from King by the security guard and used by the government at trial. King asserts that her motion to suppress pursuant to Fed.R.Crim.P. 41(e)[1] clearly and specifically alleged facts challenging both the existence of probable cause for the arrest and the government's claim that the security guard acted as a private citizen in making the arrest.

"A district court is required to conduct an evidentiary hearing on a motion for suppression and return only if evidence on an issue of fact is necessary to the decision of the motion.... The party requesting a hearing bears the burden of showing that there are disputed material facts." *Nechy v. United States (In re Searches and Seizures Conducted on October 2, and 3, 1980)*, 665 F.2d 775, 776 (7th Cir.1981). King asserts that her motion to suppress clearly sets forth facts showing that the bank security guard acted as an agent for the police and unlawfully arrested her. King claims that the guard's report disputes the government's claim that the guard acted as a private citizen. She also argues that subpoenaed police bulletins raise a probable cause issue by refuting the security guard's statement that King was the subject of a fraud bulletin.

The government, however, contends that the guard acted solely as an agent of the bank in detaining, questioning, and searching King. The government asserts that the security guard's report clearly estab-

---

1. Rule 41(e) provides:

    (e) Motion for Return of Property. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

lishes that bank personnel contacted the police after the bank guard detained King. The government argues that the only cooperation between the guard and the police occurred when the guard, acting as the bank's agent, signed a complaint against King after the police arrived. The government therefore concludes that King's motion did not allege any specific facts showing that the guard acted as an agent of the police in detaining King.

The only material fact necessary to the decision of King's suppression motion was whether the bank security guard was acting as an agent for the police when the guard detained King. The guard's report clearly supports the government's contentions. The defendant has failed to establish the existence of material disputed facts, and the district court therefore was not required to hold an evidentiary hearing.

■ King next claims error in the district court's denial of her motion to quash her arrest on February 17, 1981, outside Damen Savings and Loan ("Damen") in Schaumburg, Illinois, and to suppress evidence obtained as a result of that arrest. King contends that the police officer did not have probable cause to detain or arrest King when he encountered her in the bank parking lot and that the subsequent search of her purse was therefore illegal.

After an evidentiary hearing, the district court found that the arresting officer had expertise in financial crimes and that the information provided him was reasonably trustworthy. The trial judge also found that the arresting officer had conducted prior investigations of check-kiting schemes which "closely paralleled" King's checking account transactions. The trial court concluded that Detective Fries had probable cause to arrest King and therefore denied the motion to quash the arrest.

On review, we will not overturn the district court's findings unless they are clearly erroneous, as the trial judge has had the opportunity to assess the credibility of the witnesses at the evidentiary hearing. *United States v. Covelli,* 738 F.2d 847, 853 (7th Cir.), *cert. denied,* — U.S. ——, 105

S.Ct. 211, 83 L.Ed.2d 141 (1984). The *Covelli* court set out the standard for a trial court's probable cause determination:

> The police have probable cause to arrest an individual where "the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Jones,* 696 F.2d 479, 486 (7th Cir.1982), *cert. denied,* [462 U.S. 1106], 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). The determination of whether probable cause exists in a given situation involves "the factual, practical considerations of everyday life upon which reasonable, prudent [persons], not legal technicians act." *United States v. Watson,* 587 F.2d 365, 368 (7th Cir.1978), *cert. denied, Davis v. United States,* 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979).

*Id.* at 853.

Detective Fries arrested King in Damen's parking lot on the strength of information received from Jerry Gartner, Damen's branch manager, in a telephone conversation. Gartner told Fries that: (1) a woman named Cynthia King had opened an account at Damen on February 6, 1981, with a $20 cash deposit; (2) after the account was opened, a $6,800 check drawn on a bank in Cleveland, Ohio, was deposited into the account; (3) the $6,800 check was a starter check from the Ohio bank and was dated February 9, 1981; (4) the $6,800 check was not honored by the Cleveland bank; (5) Gartner had recently received information from the Cleveland bank that the bank account was opened with fictitious identification; and (6) Cynthia King was presently at Damen picking up printed checks for her account. Gartner also gave

Fries a physical description of King. When Fries and another detective arrived at Damen, approximately ten minutes after speaking with Gartner, he saw a woman matching Gartner's physical description of King leaving the building. After King identified herself, Fries told her to wait with the other detective while Fries went inside to confirm the facts with Gartner.

Reviewing this information with the principles governing a trial court's probable cause determination in mind, we are satisfied that the trial judge did not abuse his discretion in finding that Detective Fries had probable cause to arrest King.

■ King's final objection is to the juxtaposition of instructions on accountability, joint venture, and conspiracy without an additional clarifying instruction. King does not dispute that each instruction given accurately summarizes the law. She instead argues that these instructions, given back-to-back without a clarifying instruction, confused and misled the jury into concluding that they could find King guilty of conspiracy without first finding that she had knowledge of the conspiracy. King asserts that the trial court erred in not giving an additional instruction informing the jury that before they applied the accountability and joint venture instructions to the conspiracy charge they must initially find that the defendant knew that a conspiracy existed.

"In examining the propriety of jury instructions, we view the instructions as a whole and 'as long as the instructions treat the issues fairly and accurately, they will not be interfered with on appeal.'" *United States v. Thibodeaux*, 758 F.2d 199, 202 (7th Cir.1985) (*quoting United States v. Croft*, 750 F.2d 1354, 1366 (7th Cir.1984)). The judge here instructed the jury on the elements of conspiracy, one of which is "that the defendant knowingly and inten-

tionally became a member of the conspiracy." The judge also charged the jury that "[t]he government must prove beyond a reasonable doubt from the defendant's own acts and statements that he or she was aware of the common purpose and was a willing participant." Furthermore the trial judge also explained that "[i]f you find that the defendant merely—and this would be the defendant King—associated with members of the conspiracy, had an opportunity to join the conspiracy, or had knowledge without an intent and agreement to accomplish a specific illegal objective, then she is not a conspirator and you must find her not guilty." [2]

Considering these instructions as a whole, the instructions sufficiently and accurately informed the jury that to find King guilty of conspiracy they must find that King knew of the conspiracy and willingly joined it. We therefore find no error in the trial court's jury instructions.

## II. DAVID GOUDY

Defendant Goudy was convicted of one count of conspiracy to commit bank larceny in violation of 18 U.S.C. § 2113(b); two counts of aiding and abetting the interstate transportation of a falsely made security in violation of 18 U.S.C. §§ 2 and 2314; two counts of bank larceny in violation of 18 U.S.C. § 2113(b); one count of entering a bank with the intent to commit a felony in violation of 18 U.S.C. § 2113(a); and one count of aiding and abetting the commission of bank larceny in violation of 18 U.S.C. §§ 2 and 2113(b).

Goudy was sentenced to concurrent sentences of fifteen years on one count of entering a bank with the intent to commit a felony; ten years each on two counts of bank larceny; ten years each on two counts of aiding and abetting the interstate trans-

---

**2.** The judge then gave the following definition of "knowingly":

When the word "knowingly" is used in these instructions, it means that the defendant realized what he/she was doing and was aware of the nature of his/her conduct, and did not act through ignorance, mistake or accident. Knowledge may be proven by defendant's conduct, and by all facts and circumstances surrounding the case. No person can intentionally avoid knowledge by closing his/her eyes to facts which should prompt him/her to investigate.

portation of a falsely made security; ten years on one count of aiding and abetting the commission of bank larceny; and five years on one count of conspiracy. Goudy also was ordered to pay restitution of $75,000.

Goudy specifies five claims of error warranting either reversal of his conviction, reversal and remand for a new trial, or reduction of his sentence. Goudy challenges his indictment under 18 U.S.C. § 2113(a) instead of 18 U.S.C. § 2113(b), the effectiveness of his counsel, the district court's denial of his motions for mistrial and for severance, the sufficiency of the evidence, and his sentence of fifteen years for entering a bank with the intent to commit a felony.

■ Goudy argues that in count ten of the indictment the government improperly charged Goudy with violating 18 U.S.C. § 2113(a). Goudy concedes that the "literal language" of section 2113(a) covers his offense, but nonetheless claims that Congress did not intend that the punishment for a nonviolent fraud upon a bank be "doubled" simply because an act in furtherance of the scheme to defraud happened to take place in a bank. Goudy claims that section 2113(a) should not apply to fraud prosecutions and, citing *Bell v. United States*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983), argues that only section 2113(b) should be used to prosecute nonviolent entries with intent.[3]

As Goudy raises this issue for the first time on appeal, Goudy has waived this challenge to the indictment. Fed.R.Crim.P. 12(b)(2) and (f).[4] *See United States v. Covelli*, 738 F.2d 847, 862 (7th Cir.1984). "Rule 12 ensures that trials will be efficient and that criminal defendants will not be allowed to delay raising claims for tactical reasons." *United States v. Griffin*, 765 F.2d 677, 681 (7th Cir.1985).

■ Even if we were to disregard Goudy's waiver, however, we would find his claim meritless. Goudy concedes that his conduct falls within the literal language of

---

**3.** Sections 2113(a) and (b) provide:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

**4.** Rule 12(b)(2) and 12(f) provide:

(b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)....

(f) Effect of Failure to Raise Defenses or Objections. Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

section 2113(a). Furthermore, as section 2113(d)[5] deals specifically with violent entry, it seems that Congress did intend section 2113(a) to cover nonviolent entry of a bank. The statute's legislative history supports this interpretation. As the Supreme Court noted in *Bell*, in its original form the Federal Bank Robbery Act

> governed only robbery—a crime requiring a forcible taking.... By 1937 the concern was broader, for the limited nature of the original Act "ha[d] led to some incongruous results." ... It was possible for a thief to steal a large amount from a bank "without displaying any force or without putting anyone in fear," ... and he would not violate any federal law. Congress amended the Act to fill this gap, adding language now found at § 2113(a) and (b).... Although the term "larceny" appears in the legislative reports, the congressional purpose plainly was to protect banks from those who wished to steal banks' assets—even if they used no force in doing so.

462 U.S. at 361–62, 103 S.Ct. at 2401–02. Moreover, the Supreme Court has interpreted section 2113(a) "to cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime. The gravamen of the offense is not in the act of entering.... Rather the heart of the crime is in the intent to steal." *Prince v. United States*, 352 U.S. 322, 328, 77 S.Ct. 403, 406, 1 L.Ed.2d 370 (1957). In contrast, section 2113(b) was intended "to cover a situation where a person entered a bank with no unlawful intent, but after entry formed an intent to commit and committed a larceny, or where a larceny was committed and the fact of entry with unlawful intent could not be established."

**5.** Section 2113(d) provides:

> (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

*Purdom v. United States*, 249 F.2d 822, 827 (10th Cir.1958).

As the language and the legislative history of the statute indicates, the government properly alleged count ten as a violation of section 2113(a), not 2113(b). The government alleged that Goudy entered the Elgin National Bank and attempted to withdraw $500 from a savings account with the intent to commit a felony, bank larceny in violation of section 2113(b). The government did not charge, nor did the proof at trial establish, an actual "taking and carrying away," an essential element of section 2113(b).[6]

By waiting to raise this issue on appeal, Goudy has waived this challenge to the indictment. But even if he had not waived the issue, his challenge to the indictment would fail as the government properly charged a violation of section 2113(a) in count ten.

Goudy next claims that his trial counsel's preparation of the case was not reasonable according to prevailing professional norms and thus violated his Sixth Amendment right to counsel. Goudy bases his claim on three omissions by his counsel: (1) his attorney did not file any pretrial motions; (2) his attorney did not visit or discuss the case with him in the two and one-half months directly preceding the trial; and (3) his attorney allegedly did not completely review the evidence with him. Stating these three reasons, Goudy asked the district court on the first day of trial to order his counsel to withdraw. The trial judge questioned Goudy's attorney and then denied Goudy's motion for new counsel and for a continuance. Goudy appeals this denial.

**6.** [T]he elements which have to be proven [under § 2113(a)] are entering or attempting to enter a bank *and* intent to commit a felony or larceny.... This section can be contrasted with § 2113(b), in which the elements of the crime are taking and carrying away with the intent to steal or purloin.

*Robinson v. United States Board of Parole*, 403 F.Supp. 638, 642 (W.D.N.Y.1975).

■ A defendant asserting an ineffective assistance claim has the burden of establishing that his lawyer's performance was deficient and that the deficiency prejudiced the outcome of the trial. *United States v. Dyer,* 784 F.2d 812, 816 (7th Cir. 1986). "Deficient performance is to be judged according to an objective standard of reasonableness, giving a high degree of deference to counsel, and making every effort to evaluate the conduct from counsel's perspective at the time without the distorting effects of hindsight." *United States v. Sherwood,* 770 F.2d 650, 655 (7th Cir.1985). Furthermore, a reviewing court must consider "the totality of circumstances in the particular case" to determine whether the attorney's performance met a minimum standard of professional representation. *United States v. Phillips,* 640 F.2d 87, 92 (7th Cir.1981). Such a review necessitates "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2066 (1984).

■ Goudy has not established that his trial counsel's performance was deficient. Goudy faults his attorney for not making any pretrial motions, but does not indicate what motions his attorney should have made. Furthermore, Goudy's assertion that his attorney failed to visit him during the months immediately preceding trial does not establish that his counsel was not adequately prepared for trial. Goudy's attorney visited him three times in November 1984. The trial began on February 19, 1985. At a hearing on Goudy's motion for new counsel, his attorney stated that he had no reason to meet with his client in the months immediately before trial. Goudy himself gives no reason for a meeting; nor does Goudy point to any action or inaction by his counsel at trial that would suggest that his counsel was unprepared. Goudy instead merely concludes that his attorney could not possibly have been prepared for this trial because his counsel only interviewed him three times. The record does not support this conclusion. As for Goudy's third objection, the government asserts that they followed an "open file discovery" practice for documents in this case, and Goudy's counsel contends that he forwarded all documents received in discovery to Goudy. Furthermore, the trial judge delayed the trial for several hours specifically to allow Goudy to review all the documents with his attorney. After reviewing the evidence with his attorney, Goudy told the court that he felt better and was ready to go to trial.

Goudy's assertions also fail to establish that his trial counsel's alleged "deficiencies" prejudiced the outcome of the trial. Goudy does not point to any evidence that would have been excluded by a pretrial motion. Nor does Goudy suggest in any way how the outcome of the trial would have differed if some unspecified motions had been filed or if his attorney had met with him some unspecified number of times before the trial. Furthermore, Goudy's attorney at trial made timely objections to questions and to the admission of evidence and thoroughly cross-examined witnesses.

Goudy's conclusory allegations fall far short of showing that his attorney failed to meet professional standards and that his attorney's conduct prejudiced the outcome of the trial. A review of the record satisfies us that his trial counsel's representation more than met professional standards. Goudy's claim of ineffective assistance of counsel must therefore fail.

Goudy contends also that the district judge's denial of his motion for severance or for mistrial requires reversal on all counts and remand for a new trial. Goudy claims that the actual conduct of codefendant Cynthia King's defense mandated severance. Goudy objects to the cross-examinations of Paula Stigler, Charles Hill, and Detective Thomas Fries, a Schaumburg police officer, in which King's attorney attempted to develop the defense that the women in this conspiracy, including King, had been coerced into participating.

During cross-examination of Paula Stigler, King questioned her about the men physically abusing her and other women to

force them to participate in the conspiracy. On redirect, the government elicited Stigler's testimony that David Goudy and other male coconspirators beat her and burned her with an iron. On recross of Stigler, King returned to the subject of physical abuse by Goudy and other male coconspirators. When cross-examining Charles Hill, one of the coconspirators, King attempted to elicit testimony that the male coconspirators waited outside the banks for the women to make sure the women did what the men wanted. When Hill denied this, King asked leading questions about women being abused, burned, pistol-whipped, and sent out in the cold barefoot. King also brought out that Hill and Goudy both carried guns. During cross-examination of Detective Fries, King questioned Fries about Webster Nolen, another coconspirator, waiting for codefendant King outside Damen Savings and Loan while King went in to pick up printed checks for an account that was opened with a bad check.

Goudy never objected to King's cross-examination of Paula Stigler. The government objected on hearsay grounds when King asked if Stigler was aware of other women who were forced to participate in the conspiracy, but the judge overruled this objection. During the government's redirect of Stigler, Goudy made two general objections which were overruled and one hearsay objection which was sustained. On King's recross-examination of Stigler, Goudy did not object when King again raised the issue of Goudy and other male members of the conspiracy physically abusing the female coconspirators. After Stigler finished her testimony, however, Goudy moved for severance or a mistrial on the basis of the evidence about physical abuse. The judge overruled this motion. Goudy made no objection to King's series of leading questions to Charles Hill or to King's cross-examination of Detective Fries.

■■ Mutually antagonistic defenses require severance under Fed.R.Crim.P. 14[7] "only where acceptance of one party's defense precludes the acquittal of the other." *United States v. Banks*, 687 F.2d 967, 973 (7th Cir.1982). As Goudy acknowledges that is not the case here. Severance may also be granted if the actual conduct of one defense unduly prejudices the other defendant. "This ground[ ] for severance, however, depends upon a careful evaluation of facts elicited, prejudicial tendencies, and the entire course of the trial prior to the challenged conduct." *Id.* The trial judge is in the best position to assess any prejudice from the conduct of a defense, and a reviewing court will reverse a judge's ruling on a severance motion only upon a showing of a clear abuse of discretion. *United States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir.1980).

■ The problem here did not arise until trial. Goudy made no pretrial motion for severance, and the judge therefore did not have advance warning that this issue might arise. Once the issue arose at trial, however, Goudy's objections and subsequent motion for severance or mistrial were too little and too late. The evidence had already gotten in by the time Goudy objected. Goudy did not object when King first questioned Stigler about physical abuse of the female coconspirators by the males; Goudy instead waited until the government's redirect of Stigler to object. Goudy thus allowed King to open the door to this subject during the cross-examination of Stigler. Once the defense opened the door, the government had the right to pursue the issue on redirect. *See United States v. Draiman*, 784 F.2d 248, 255 (7th Cir.1986). When Goudy finally objected to the government's redirect of Stigler, he made a general objection that did not alert the judge to his specific concern about this evidence. Moreover, Goudy never moved to strike any of this testimony, nor did he

7. The relevant portion of Rule 14 provides:
If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or informa- tion or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

request or tender a curative instruction. Nevertheless, the evidence was not emphasized to the jury as the court barred both sides from mentioning in closing argument that either of the defendants had been coerced into participating in the conspiracy.[8]

In these circumstances, we do not find that the actual conduct of King's defense was such that the district court abused its discretion by denying Goudy's severance motion. Furthermore, as the trial judge did not abuse his discretion in allowing this testimony in these circumstances, *see United States v. Covelli*, 738 F.2d 847, 854 (7th Cir.1984), he did not abuse his discretion in denying Goudy's motion for mistrial. *See United States v. Torres*, 733 F.2d 449, 460–62 (7th Cir.1984); *United States v. Phillips*, 640 F.2d 87, 91 (7th Cir.), *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981); *United States v. Lawson*, 507 F.2d 433, 436–37 (7th Cir.1974).

Goudy also challenges the sufficiency of the evidence on six of the seven counts of his conviction. The test for sufficiency of the evidence is whether, viewing the evidence and all reasonable inferences in the light most favorable to the government, " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Herrera*, 757 F.2d 144, 149 (7th Cir.1985) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The appellant bears a heavy burden and "thus '[o]nly when the record contains no evidence, regardless of

how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict.' " *United States v. Moore*, 764 F.2d 476, 478 (7th Cir.1985) (*quoting United States v. Redwine*, 715 F.2d 315, 319 (7th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984)).

Goudy further argues that the evidence of count ten[9] did not establish that he entered a bank, and therefore the evidence was insufficient to convict him of violating 18 U.S.C. § 2113(a). The evidence established that on February 27, 1980,[10] Goudy went to the walk-up window of the drive-up facility of Elgin National Bank, a block away from the main bank building, and attempted to withdraw money from an account in the name of Larry Watson. Goudy argues that no "entry" as required in the statute occurred because the transaction occurred at a drive-up facility, and also because he used the walk-up window and never actually entered the drive-up building.

Neither of these arguments is persuasive. Section 2113(a) applies to "any bank ... or any building used in whole or in part as a bank." "The words of the statute ... reflect that Congress by appropriate language intended to make it a crime to enter *any part of a bank building* with intent to steal." *United States v. Lankford*, 573 F.2d 1051, 1053 (8th Cir.1978) (emphasis added). It is undisputed that the drive-up facility is a building used as a bank, an arm of the Elgin Bank. The drive-up facility of the Elgin Bank there-

---

**8.** King never testified so there was no direct evidence that she was compelled or coerced into participating in the conspiracy. And apparently none of the witnesses testified that they saw King being physically abused. The judge therefore granted the government's motion *in limine* and prevented King from arguing coercion as a defense.

**9.** Count ten alleged that Goudy entered the Elgin National Bank with the intent to commit a felony in violation of 18 U.S.C. § 2113(a).

**10.** Goudy also claims that the evidence was insufficient because the proof did not establish that the acts supporting count ten took place on the date indicated in the indictment. The evi-

dence at trial established that the events actually occurred two days after the date specified in the indictment. This difference in dates, however, does not establish that evidence of an essential element of the crime was insufficient. The indictment charged that Goudy entered the Elgin National Bank with intent to commit a felony "on or about February 25, 1980." The proof at trial showed that this act took place on February 27. The evidence need not establish the exact date of the offense. It is sufficient that the evidence establish, as it did here, that the offense was committed on a date reasonably near the date charged.

fore is covered by the statute. A teller for the Elgin National Bank testified that Goudy "did come to the walk-up portion of the drive-up bank." Goudy points out that the teller's testimony does not describe the drive-up; however, a reasonable inference from the teller's testimony is that the walk-up window is in some way a part of an outside wall of the drive-up facility. We conclude that using the walk-up window of the drive-up facility constitutes "entering a bank" under 18 U.S.C. § 2113(a).[11] *See United States v. Phillips*, 609 F.2d 1271, 1272–73 (8th Cir.1978) (using drive-up window constitutes entering bank under section 2113(a)); *Lankford*, 573 F.2d at 1053 (an attempt to enter night depository chute is an attempt to enter the bank).

■ Goudy next claims that the evidence was insufficient to show interstate transportation of the checks supporting counts seventeen and five.[12] Goudy complains that the testimony of the government's two witnesses established the normal banking procedures for clearing checks but did not establish that each particular check had in fact been transported in interstate transportation.

The check at issue in count seventeen was drawn on a fictitious account at the United California Bank of Los Angeles. John Prah, Vice-President of Cragin Federal Savings and Loan in Chicago, Illinois testified that the check was deposited in King's account at Cragin. Prah stated that the check was subsequently returned to Cragin stamped "Account Closed." Prah

stated that the stamp on the check had to have been made by the United California Bank because only that bank could indicate that the account was closed. Prah also testified that the "normal routine" practice with a deposited out-of-state check is to return the check to the bank on which it was drawn.

The check at issue in count five was also drawn on the United California Bank. The check was stamped "Returned not paid by 16–20." Robin Dadik, a coconspirator who pled guilty, testified that she deposited this check into an account at Damen Savings Bank in Schaumburg, Illinois. An FBI agent with several years' experience in banking investigations testified that the 1984 volume of Polk's Bank Director indicates that banks with the routing number prefix "16" are in Los Angeles, California. The trial court admitted the directory into evidence pursuant to Fed.R.Evid. 803(17).[13]

Goudy's objections to the sufficiency of the proof on these two counts are meritless. Courts have consistently held that knowingly cashing a check in one state drawn on a bank in another state or delivering such a check for collection is sufficient evidence of the interstate transportation requirement of 18 U.S.C. § 2314. *United States v. Brown*, 605 F.2d 389, 393 (8th Cir.1979); *United States v. Newson*, 531 F.2d 979, 981 (10th Cir.1976); *United States v. Hill*, 468 F.2d 899, 899 (5th Cir. 1972); *United States v. Webb*, 443 F.2d 308, 310 (5th Cir.1971); *Amer v. United States*, 367 F.2d 803, 804 (8th Cir.1966).

11. Goudy also argues that his presence in the lobby of the drive-up when the police arrived was not an entry into the bank. He furthermore asserts that even if it were an entry, he did not possess the requisite intent because he entered the lobby in response to the bank teller's efforts to detain Goudy until the police arrived. However, because we hold that Goudy entered the bank by using the walk-up window of its drive-up facility, we need not address these arguments.

12. Count seventeen alleged that Goudy aided and abetted codefendant King in causing the interstate transportation of a falsely made se-

curity in violation of 18 U.S.C. §§ 2 and 2314. Count five charged Goudy with aiding and abetting coconspirator Robin Dadik in causing the interstate transportation of a falsely made security.

13. Rule 803(17) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(17) Market reports, commercial publications, market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations.

Delivering the check for collection [14] "causes" it to be transported in interstate commerce. *Pereira v. United States,* 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954). "It is common knowledge that such checks must be sent to the drawee bank for collection, and it follows that [the defendant] intended the [local] bank to send this check across state lines." *Id.*

The government introduced two checks drawn on a California bank. Two prosecution witnesses testified that these checks were deposited in two Illinois banks. The government also properly introduced evidence regarding the markings on the backs of the checks through a bank official and an experienced FBI agent. *See United States v. Mustin,* 369 F.2d 626, 627 (7th Cir.1966) (per curiam) (bank employee's expert opinion about markings on check and normal movement of checks was proper expert testimony). The evidence was more than sufficient for a reasonable juror to find interstate transportation of these checks beyond a reasonable doubt.

Goudy also complains that the evidence supporting count nineteen [15] was insufficient because the bank official's testimony was based on documents of which she had no personal knowledge. The bank's vice-president and cashier testified that the bank suffered a $2,500 loss.

■ A trial court's evidentiary rulings may be reversed only upon a showing of abuse of discretion. *See United States v.*

*Davis,* 772 F.2d 1339, 1343 (7th Cir.1985); *United States v. Harris,* 761 F.2d 394, 398 (7th Cir.1985). The district court did not abuse its discretion in allowing the bank official's testimony which was based upon bank records properly admitted pursuant to Fed.R.Evid. 803(6).[16]

■ An appellate court may not overturn a guilty verdict unless "'the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983) (*quoting Brandom v. United States,* 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971)). Viewed in the light most favorable to the government, *United States v. Percival,* 756 F.2d 600, 610 (7th Cir.1985), the evidence of count nineteen showed that Goudy opened an account at Union National Bank on February 11, 1980, under the name Larry Watson with a $25 cash deposit. On June 2, 1980, Goudy deposited a $6,380 check payable to Larry Watson and drawn on an Indiana bank. On June 6, Union National Bank cashed a $2,500 check drawn by Larry Watson payable to Webster Nolen. On June 8, the check drawn on the Indiana bank returned unpaid because the account was closed. These facts are such that a rational jury could have found beyond a reasonable doubt that Goudy aided and abetted the commission of bank larceny.

---

**14.** "There is no requirement of actual physical transportation by a defendant and it is sufficient that a defendant cause the instrument to be transported by the negotiation process.... The essence of the offense is the fraudulent scheme itself and the interstate element is only included to provide a constitutional basis for the exercise of federal jurisdiction." *Newson,* 531 F.2d at 981 (citations omitted).

**15.** Count nineteen charged Goudy with aiding and abetting the commission of bank larceny in violation of 18 U.S.C. §§ 2 and 2113(b). Count nineteen alleged that Goudy aided and abetted Webster Nolen who took $2,500 with the intent to steal from Union National Bank in Elgin, Illinois.

**16.** Rule 803(6) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Goudy also claims the evidence of counts eight and nine [17] was insufficient because the government did not prove that the banks involved suffered a loss. The vice-presidents of the respective banks testified that the banks suffered no loss because the deposited checks had already cleared when the withdrawals were made. Goudy cites no authority, however, and we have found none, for the proposition that section 2113(b) requires proof that the bank suffered a loss. The statute itself contains no language indicating that an actual loss is an element of the crime. The evidence established that these two checks were part of the continuing scheme to defraud these banks. The evidence of counts eight and nine was therefore sufficient.

Goudy finally claims that the district court abused its discretion in sentencing him to fifteen years on count ten for entering a bank with intent to commit a felony. Goudy argues that the sentence on count ten should be reduced to not more than ten years, the maximum term allowed under section 2113(b). Goudy posits that Congress could not have intended to penalize more severely the inchoate offense than the completed offense of larceny.

The statutory scheme of section 2113 [18] has been explained by this court:

Subsections (a) and (b) are alternative methods of committing the offense defined by the statute. Under the second paragraph of section 2113(a), the entry or the attempted entry of a bank with intent to commit a felony or larceny is sufficient to sustain a conviction. The intended felony or larceny need not be accomplished. On the other hand, under section 2113(b) an offender need not have formed an intent to steal before entering the bank; if he steals money belonging to the bank, he is guilty regardless of when he formed the intent. An offender

may not only be guilty of having entered the bank to commit a larceny (proscribed by § 2113(a)) but may also have accomplished the intended larceny (proscribed by § 2113(b)). In that situation he may be indicted under either or both subsections, but the sentences may not be pyramided.... Moreover, a violation of section 2113(b) may be committed without force, violence, or intimidation.

*United States v. Brunjes*, 329 F.2d 339, 341 (7th Cir.1964), *cert. denied*, 377 U.S. 983, 84 S.Ct. 1892, 12 L.Ed.2d 751 (1964) (citations omitted). Moreover, the Supreme Court has stated:

It is a fair inference from the wording in the Act, uncontradicted by anything in the meager legislative history, that the unlawful entry provision was inserted to cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime. The gravamen of the offense is not in the act of entering, which satisfies the terms of the statute even if it is simply walking through an open, public door during normal business hours. Rather the heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated....

We hold, therefore, that when Congress made either robbery or an entry for that purpose a crime it intended that the maximum punishment for robbery should remain at 20 years, but that, even if the culprit should fall short of accomplishing his purpose, he could be imprisoned for 20 years for entering with the felonious intent.

*Prince v. United States*, 352 U.S. 322, 328–29, 77 S.Ct. 403, 406–07, 1 L.Ed.2d 370 (1957) (footnotes omitted).[19] As these

---

17. Counts eight and nine charged Goudy with bank larceny in violation of 18 U.S.C. § 2113(b). Count eight alleged that Goudy took $7,500 with the intent to steal from the First National Bank of Elgin. Count nine alleged that Goudy took $3,500 with the intent to steal from the Elgin National Bank.

18. For the text of §§ 2113(a) and (b), see note 4 *supra*.

19. Prince does no more than proscribe the pyramiding of sentences upon convictions for entry and larceny or robbery rather than effecting a merger of the one with either of the others.... [T]o hold otherwise would pro-

cases indicate, although the statute may not be a model of draftsmanship, it is clear that the possible penalty for entering a bank with the intent to commit a felony is a maximum fine of $5,000 and/or a prison term of twenty years.

An appellate court "may not reduce or change a sentence imposed within statutory limits 'unless the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence.'" *United States v. Schmidt,* 760 F.2d 828, 833 (7th Cir.), *cert. denied sub nom, Folak v. United States,* —— U.S. ——, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985). *Accord United States v. McCoy,* 770 F.2d 647, 649 (7th Cir.1985). Goudy does not claim that the district judge relied on improper or unreliable information or failed to exercise any discretion at all, and Goudy's sentence was well within the statutory limit of twenty years. Moreover, the evidence showed that Goudy headed a large check-kiting conspiracy that operated for several years and defrauded several banks out of substantial sums of money. We find that the district court did not abuse its discretion in sentencing Goudy to fifteen years imprisonment.

### III. CONCLUSION

For the reasons stated above, the convictions and sentences of both defendants are

AFFIRMED.

duce an anomalous interpretation of the statute which would allow one entering a bank with the intent to commit a felony (including larceny) against the bank to be sentenced to twenty years imprisonment if his intent should be frustrated but to no more than ten years if he should steal ... $28,194 and no more than one year if he should take less than $100.

*United States v. Williamson,* 255 F.2d 512, 514 (5th Cir.1958). *Accord Smith v. United States,* 273 F.2d 337, 338 (5th Cir.1960) (per curiam); *Counts v. United States,* 263 F.2d 603, 604 (5th Cir.1959) (per curiam); *Purdom v. United States,* 249 F.2d 822, 827 (10th Cir.1958); *Sawyer v. United States,* 312 F.2d 24, 26–27 (8th Cir.1963).